501 P.2d 422

**STATE COMPENSATION FUND, and Muldner Livestock Transportation, Inc., Petitioners,**

v.

**Lucilla DE LA FUENTE and Christopher Anthony De La Fuente, individually and by his Guardian ad Litem, Lucilla De La Fuente, as beneficiaries of Climmie Everett, Deceased, Respondents,**

**The Industrial Commission of Arizona, Respondent.**

**No. I CA–IC 677.**

Court of Appeals of Arizona,
Division 1,
Department B.

Sept. 28, 1972.

Rehearing Denied Oct. 31, 1972.

Review Granted Dec. 5, 1972.

Robert K. Park, Chief Counsel, State Compensation Fund by J. Victor Stoffa, Phoenix, for petitioners.

Rowland S. Stevens, Goodyear, for respondents De La Fuente.

William C. Wahl, Jr., Chief Counsel, Phoenix, for respondent The Industrial Comm. of Ariz.

HAIRE, Chief Judge, Division 1.

In this review by certiorari of death benefit awards issued by the Industrial Commission, the petitioners' major contention is that the statutory provision pursuant to which the Commission awarded the death benefits is unconstitutional. Alternatively it is contended that the awards must be set aside as offensive to the public policy of this state.

The pertinent facts stated in a light most favorable to upholding the awards are as follows:

On October 20, 1969, Climmie Everett was killed in an accident arising out of and in the course of his employment. On January 25, 1969, some eight months prior to his death, he had moved into claimant Lucilla De La Fuente's apartment and commenced living with her, and thereafter continued to cohabit with her as though married, in various localities until the date of his death. Neither before nor during this period did the deceased and Miss De La Fuente enter into a marriage ceremony of any kind. In July of 1969, some three months before Climmie Everett's death, Miss De La Fuente bore a son whom she named Christopher Anthony De La Fuente. It is admitted that Christopher was not the son of the deceased, but rather was the son of a third party not involved in these proceedings. From and after January 25, 1969, until the death of the deceased, Miss De La Fuente received her entire support from the deceased, and from and after July 1969, Christopher De La Fuente also received his entire support from the deceased.

At this time it is well to point out the relationships which admittedly are *not* here involved. First, there is no claim that the deceased and Miss De La Fuente were legally husband and wife, or ever thought that they were, although there is some evidence that the decedent might have contemplated the possibility of marriage to Miss De La Fuente sometime in the future. Thus Miss De La Fuente did not occupy the status of a wife or putative wife. Second, Christopher De La Fuente was not a "natural, posthumous or adopted child" of the deceased, nor was he a stepchild of the deceased within the meaning of A.R.S. §§ 23–1046 and 23–1064. In short, there was no kindred relationship between the deceased and the claimants, either through blood or marital ties. However, it is clear that at the time of decedent's death, both claimants were living with him and received their entire support from him. The Commission sustained the hearing officer's award of death benefits to Miss De La Fuente and Christopher purportedly under the authority of A.R.S. § 23–1046, subsec. A, par. 8.

The genesis of the inclusion of provisions for death benefits in Arizona's workmen's compensation law is found in Art. XVIII, § 8, of the Arizona Constitution, A.R.S., as follows:

"The Legislature shall enact a Workmen's Compensation Law . . . by which compensation shall be required to be paid . . . to his [workman's] dependents, *as defined by law,* in case of his death. . . ." (Emphasis added).

Pursuant to this constitutional mandate, the dependents entitled to receive death benefits were first "defined by law" by the provisions of §§ 70 and 72, Ch. 83, Laws of 1925. In subparagraphs 2 through 6 of

§ 70 provision was made for payment of death benefits "in the amount" and "to and for the benefit of" certain designated persons, in each instance related by blood or marriage to the deceased workman. When § 70 is considered together with § 72, it is evident that the dependency for support of these designated beneficiaries was generally to be a question of fact in each instance, although in certain cases involving a surviving spouse or child of the decedent dependency was to be conclusively presumed. Ocean Accident & Guarantee Corporation v. Industrial Commission, 34 Ariz. 175, 269 P. 77 (1928).

Following the first six subparagraphs of § 70 we find a rather ambiguous subparagraph 7, stating in pertinent part:

"7. In all other cases, questions of total or partial dependency shall be determined in accordance with the facts as the facts may be at the time of the injury. . . ."

We say rather ambiguous because of the use by the legislature of the words "in all other cases". What "other cases"? There were no benefits provided for "other cases" by the terms of the enactment. In compiling the revised code of 1928, Judge Struckmeyer apparently recognized this ambiguity, and struck the words "in all other cases", so that the provision then read as follows:

"Questions of dependency shall be determined according to the facts as of the time of the injury."

*See* § 1438A, Revised Code of Arizona 1928. The quoted Struckmeyer code language was again utilized when House Bill 19, First Special Session, Eleventh Legislature, making changes not here pertinent, was enacted in 1933. At this point in the development of our law it appears reasonably clear to us that the only dependents "defined by law" to be eligible for death benefits were those classes of beneficiaries specifically listed in subparagraphs 2 through 6 of § 70, all related to the decedent by blood or marriage. This construction would eliminate the claimants in this review as possible beneficiaries if there had been no subsequent changes in the statutes. *Cf.* Comment of Justice McAlister in Ulbrich v. Tovrea Packing Co., 49 Ariz. 269, 66 P.2d 235 (1937).

However, in 1939 the pertinent statute was again amended. *See* Ch. 28, § 7, Laws of 1939. Except for the addition of some procedural language in 1968, the changes made in 1939 have continued in effect and are now found in paragraph 8 of A.R.S. § 23–1046, subsec. A.[1] Summa-

---

1. A.R.S. § 23–1046, subsec. A reads as follows:

"A. In case of an injury causing death, the compensation therefor shall be known as a death benefit, and shall be payable in the amount, for the period, and to and for the benefit of the persons following:

"1. Burial expenses, not to exceed eight hundred dollars, in addition to the compensation.

"2. To the widow, if there is no child, thirty-five per cent of the average wage of the deceased, to be paid until her death or remarriage, with two years' compensation in one sum upon remarriage.

"3. To the widower, if there is no child, thirty-five per cent of the average wage of the deceased, if wholly dependent for support upon the deceased employee at the time of her death, to be paid until his death or remarriage.

"4. To the widow or widower, if there is a child or children, the additional amount of fifteen per cent of such wage for each child until the age of eighteen years, the total not to exceed sixty-six and two-thirds per cent of the average wage.

"5. To a single surviving child, in the case of the subsequent death of a surviving wife, or a dependent husband, or if there is no surviving wife or dependent husband, twenty-five per cent of such average wages, or if there is more than one surviving child, twenty-five per cent for one child, and fifteen per cent for each additional child, to be divided among such children share and share alike, but not exceeding a total of sixty-six and two-thirds per cent of the average wage. Compensation to any such child shall cease upon death, marriage or upon reaching the age of eighteen years, except, if

-rized, the present statute, in defining the dependents entitled to death benefits, provides in its introductory paragraph for payment (1) "in the amount" (2) "for the period" and (3) "to and for the benefit of the persons following". Provisions are then made through paragraph 7 for payment of varying *specified percentages* of the decedent's average monthly wage for varying *specified periods* of duration, to varying *specified classes of dependents* related to the decedent. Paragraph 8 then states:

> "If there are no dependents in the foregoing schedule, dependency shall be determined according to the facts as of the time of the injury in accordance with the provisions of § 23–1047."

This subparagraph re-introduces the ambiguity found in the original 1925 enactment. However, it is sufficiently more definite than the 1925 act so that from a reading of its provisions it can reasonably be implied that the legislature did intend that certain unspecified dependents would be entitled to receive death benefits if none of the specified dependents survived the decedent. From what is said, it can be implied that

any person who was a dependent in fact of the decedent at the time of his death would be a person "to and for the benefit of" whom death benefits would be payable. *See* Hodges v. Industrial Commission, 73 Ariz. 326, 241 P.2d 431 (1952). But, what about the other two standards set forth in the introductory language of § 23–1046— payments in what amount and for what period?

The awards here in question were purportedly made pursuant to the above-quoted paragraph 8. Benefits were awarded to Miss De La Fuente in the amount of 10% of the decedent's average monthly wage for a period "during dependency". Christopher De La Fuente was awarded 25% of the average monthly wage of the deceased "until death, marriage, or attainment of the age 18".

Petitioner's constitutional attack on these awards is premised upon the readily apparent incompleteness and vagueness of paragraph 8, which gives rise to the contention that the statute constitutes an invalid attempt to delegate legislative duties to the Industrial Commission without providing adequate standards to guide the exercise of

---

over eighteen years and incapable of self-support, when it becomes capable of self-support.

"6. To a parent, if there is no surviving wife, dependent husband or child under the age of eighteen years, if wholly dependent for support upon the deceased employee at the time of his death, twenty-five per cent of the average monthly wage of the deceased during dependency, with an added allowance of fifteen per cent if two dependent parents survive, and, if neither parent is wholly dependent, but one or both partly dependent, fifteen per cent divided between them share and share alike.

"7. To brothers or sisters under the age of eighteen years, if there is no surviving wife, dependent husband, dependent children under the age of eighteen years or dependent parent, the following shall govern:

"(a) If one of the brothers or sisters is wholly dependent upon the deceased employee for support at the time of injury causing death, twenty-five per cent

of the average monthly wage until of the age of eighteen years.

"(b) If more than one brother or sister is wholly dependent, thirty-five per cent of the average monthly wage at the time of injury causing death, divided among such dependents share and share alike.

"(c) If none of the brothers or sisters is wholly dependent, but one or more partly dependent, fifteen per cent divided among such dependents share and share alike.

"8. If there are no dependents in the foregoing schedule, dependency shall be determined according to the facts as of the time of the injury in accordance with the provisions of § 23–1047."

The words "in accordance with the provisions of § 23–1047" of paragraph 8 were added by Ch. 6, § 46, Laws 1968, Fourth Special Session. Section 23–1047 merely provides the procedural device for bringing the question to the attention of the Commission for any necessary hearing.

administrative discretion, all purportedly in violation of Art. III and Art. IV, Pt. 1, § 1, Constitution of the State of Arizona.[2] Specifically, petitioners contend that the statutes set forth no standard as to either (1) the class of persons entitled to paragraph 8 benefits (2) the percentage amount of benefits to be awarded, or (3) as to the duration of the award.

As to the first of these contentions, we disagree. As previously stated, it is our opinion that it can be reasonably implied from the language of paragraph 8 that the legislature intended that if no scheduled related dependents survived, death benefits would be awarded to other unrelated persons dependent in fact upon the deceased workman at the time of his death, without requiring blood or marital relationship. While the word "dependent" is capable of various interpretations in general usage, under Arizona workmen's compensation law it has acquired a meaning sufficiently definite to provide a reasonable standard for the guidance of the Commission in the making of its administrative decision. See Waite v. Industrial Commission, 68 Ariz. 299, 205 P.2d 579 (1949); Hodges v. Industrial Commission, *supra*; Thomas v. Industrial Commission, 87 Ariz. 238, 350 P.2d 392 (1960); Ocean Accident & Guarantee Corporation, *supra*. Therefore we hold that the use in paragraph 8 of the words "dependents" and "dependency" constitutes an adequate expression of a legislatively imposed standard as to the class of persons intended to be benefitted. It might well be that the class of death benefit beneficiaries as so expanded or defined would be in excess of that required or contemplated by the Arizona Constitution in Art. 18, § 8. How-

ever, if such be the case, we point out that although the Arizona Constitution does, in Art. 18, § 8 prohibit the legislature from reducing workmen's compensation benefits below certain levels, there is nothing in the Constitution which restricts the legislature from legislating benefits in excess of constitutionally required minimums. *See* Goodyear Aircraft Corporation v. Industrial Commission, 62 Ariz. 398, 158 P.2d 511. (1945).

We turn now to petitioners' contentions. concerning the failure of the statute to make any provisions or provide any standards concerning (1) the amount to be paid. and (2) the duration of awards made to paragraph 8 dependents. The Court recognizes that some writers have advocated the discontinuance of the "adequate standards" rule for testing claimed unconstitutional delegations of legislative power in favor of a test involving an examination of the challenged legislation to determine whether there are sufficient procedural safeguards. to protect those affected by the law. *See* 1 K. Davis, Administrative Law Treatise, §. 2.15, at 58 (Supplement 1965). We find. no Arizona decisions adopting this view,. and we are not persuaded that it is in reality consonant with the fundamental separation of powers considerations which underlie the prohibition against the delegation of power constitutionally vested in the legislature.

The Arizona court has aptly described. the nondelegation principle in the following quotation from Tillotson v. Frohmiller,. 34 Ariz. 394, 271 P. 867 (1928):

" 'One of the settled maxims in constitutional law is that the power conferred upon the Legislature to make laws can-

---

2. Article III of the Arizona Constitution reads as follows:
    "The powers of the government of the State of Arizona shall be divided into three separate departments, the Legislative, the Executive, and the Judicial; and, except as provided in this Constitution, such departments shall be separate and distinct, *and no one of such de-* *partments shall exercise the powers properly belonging to either of the others.*" (Emphasis added).
    Article IV, Pt. 1, § 1 reads in pertinent part as follows:
    "The legislative authority of the State shall be vested in a Legislature, consisting of a Senate and a House of Representatives. . . ."

not be delegated by that department to any other body or authority. Where the sovereign power of the state has located the authority, there it must remain; and by the constitutional agency alone the laws must be made until the Constitution itself is changed. The power to whose judgment, wisdom, and patriotism this high prerogative has been intrusted cannot relieve itself of the responsibility by choosing other agencies upon which the power shall be devolved, nor can it substitute the judgment, wisdom, and patriotism of any other body for those to which alone the people have seen fit to confide this sovereign trust.' " [Quoting from Cooley, Constitutional Limitations, 8th ed., page 224]. 34 Ariz. at 407, 271 P. at 871.

■ This does not mean that when authorized to do so by the act itself administrative bodies may not make rules and regulations supplementing legislation for its complete operation and enforcement, if such rules and regulations are within the standards set by the legislature. Haggard v. Industrial Commission, 71 Ariz. 91, 223 P.2d 915 (1950). However, a power given must be prescribed in terms sufficiently definite to serve as a guide in exercising that power. Hernandez v. Frohmiller, 68 Ariz. 242, 204 P.2d 854 (1949).

Applying these principles to the statute in question, we find a complete absence of any statutory standards to guide the Commission in the exercise of its discretion. We further note that the Commission has not adopted any rules or regulations which would purport to control these awards.[3]

When paragraph 8 is read in conjunction with the introductory paragraph of § 23–1046, subsec. A which states that death benefits shall be payable "in the amount, for the period, and to and for the benefit of the persons following", and implying that paragraph 8 adequately expresses the *persons* to whom benefits are payable, the subparagraph constitutes an incomplete expression of the legislative intent in that it fails to express either the amount of or the period during which benefits will be paid to paragraph 8 dependents.

Assuming the existence of a legislative intent to delegate to the Industrial Commission the power and authority to determine the amount and duration of paragraph 8 death benefit awards, we hold that such paragraph 8 constitutes an invalid delegation of legislative power and therefore is invalid.

While we have assumed in our discussion above that the legislature intended to delegate to the Commission the discretion to determine the amount and duration of these benefits, there is no language in the statute which would justify such an assumption. Viewed in this light, there is another basis for finding the statute invalid separate and apart from the unconstitutional delegation principle—the statute is incomplete on its face. The applicable principles are well stated in 82 C.J.S. Statutes § 64 (1953) as follows:

"An act must be complete in all its terms when it leaves the legislature; so that those charged with the administration of such act are amenable to the courts for failure to put it into effect or for its maladministration, and so that everyone may know by reading the law what his rights are and how it shall operate when put into execution; and the court cannot supply material and essential omissions."

■ In Southwest Engineering Co. v. Ernst, 79 Ariz. 403, 291 P.2d 764 (1955), the Arizona Supreme Court recognized three bases upon which a statute without the requisite definiteness and completeness may be held invalid. First, the language used may not have sufficient legal significance to be capable of intelligent execution; second, because of undue delegation

3. We do not intimate that such rules and regulations would be valid, if adopted, without stated legislative standards.

of legislative powers, it may violate the separation of powers doctrine of Art. 3 of our Constitution; and third, its proposed operation may constitute a violation of due process, under Art. 2, § 4 of the Arizona Constitution. In our opinion the subparagraph here involved is invalid under all of these tests. It constitutes such an incomplete expression of legislative intent that it is incapable of administration without additions of a legislative character. *See* Tillotson v. Frohmiller, *supra;* Hernandez v. Frohmiller, *supra.* The claimants suggest that either the Commission or the courts can supply the paragraph 8 deficiencies by picking and choosing from the various amounts and periods of duration set forth in other subparagraphs of § 23–1046 dealing with scheduled dependents. Neither the court nor the Commission can do this for the simple and fundamental reason that such is the province of the legislature and not a function to be exercised by the judicial or the executive branches of government. We recognize that the legislature may not consider it wise from a policy standpoint to formulate with mathematical definiteness the amount and duration of paragraph 8 dependency awards, and we hasten to add that such mathematical definiteness is not required. Southwest Engineering Co. v. Ernst, *supra;* State v. Birmingham, 95 Ariz. 310, 390 P.2d 103 (1964). However, what is required is that the *legislature* provide some standards within which the Commission might act. This it has not done. As stated in Tillotson, *supra,* a measure which is incomplete and incapable of administration without additions of a legislative character is invalid, and in our opinion the Tillotson glove snugly fits paragraph 8.

We have not previously discussed in detail the reasoning behind the amount and duration of these awards as set forth in the findings of the hearing officer and affirmed by the Commission. In making the awards to the minor, Christopher De La Fuente, the hearing officer ignored the existence of Miss De La Fuente and treated Christopher as though he were a single surviving son of a decedent with no surviving widow.[4] He then treated Miss De La Fuente as though she were a *single surviving parent* of the decedent, as to the duration of her award, reasoned that the total percentage amount of both awards should not exceed that allowed in total to surviving dependent *brothers and sisters* (35%) and since 25% has already gone to Christopher De La Fuente, awarded only the remaining 10% to Miss De La Fuente. We can conceive of nothing better to illustrate the invalidity of paragraph 8 than the foregoing. The simple facts are that Christopher De La Fuente was not the surviving child of Climmie Everett with the attendant legal or moral expectations of continued support. Rather he was (legally speaking) a stranger who had been supported by the deceased for a period of some three months. Likewise, Miss De La Fuente was not a sole surviving parent nor a surviving brother or sister, nor a surviving widow. Based upon the sole standard set forth in paragraph 8 she and Christopher De La Fuente occupied exactly the same status—persons unrelated to the deceased who have shown that prior to his death he voluntarily supported them. By the preceding remarks we do not intend to be unduly critical of the hearing officer or the Commission—they were faced with the impossible task of attempting to administer a hopelessly vague and incomplete statutory enactment.

At this point we must discuss in more detail the Arizona Supreme Court decision

---

4. We point out that if this were the case, then under the terms of the statute and prior decisions of the Arizona Supreme Court, Miss De La Fuente, being in a lower dependency classification, would not be entitled to any death benefit awards. Bonnin v. Industrial Commission, 6 Ariz.App. 317, 432 P.2d 283. (1967).

in Hodges, *supra*. Hodges is the one prior Arizona decision which has held that death benefits could be awarded pursuant to paragraph 8.[5] The claimant in that case had lived with the deceased workman for eleven years prior to his injury and death, in good faith believing herself to be lawfully married to him, although in fact the marriage was invalid. The court held that she was not entitled to death benefits as a surviving widow, but that she was entitled to death benefits as a paragraph 8 dependent, and in sending the matter back to the Commission indicated that the Commission should determine the amount of the award. Under the principle stated in McKay v. Industrial Commission, 103 Ariz. 191, 438 P. 2d 757 (1968), this Court is bound by prior decisions of the Arizona Supreme Court. However, it is evident from the Hodges opinion that the question of the constitutional validity of paragraph 8 was not presented to nor considered by the Arizona Supreme Court in Hodges. Under such circumstances, the Arizona Supreme Court not having considered the constitutional issues in arriving at its conclusions, this Court is free to consider, and in fact must consider, the constitutional issues raised on this appeal. State v. Meek, 9 Ariz.App. 149, 450 P.2d 115 (1969).

Having decided that the awards must be set aside because of the constitutional invalidity of paragraph 8, it is not necessary to consider petitioners' further contention that the awards must be set aside as offensive to the public policy of this state by reason of the character of the relationship underlying the dependency involved.

The awards are set aside.

EUBANK and JACOBSON, JJ.

5. The Arizona Supreme Court decisions in Ulbrich, *supra*, and Hughes v. Industrial Commission, 69 Ariz. 193, 211 P.2d 463 (1949) involved an indirect assumption that certain claimants might have

been entitled to paragraph 8 death benefits if they had not been otherwise precluded under the actual fact situations involved in those cases from receiving benefits.