548 P.2d 26

Raymond G. GARCIA, Petitioner,

v.

The INDUSTRIAL COMMISSION of Arizona, Respondent,

American Continental Homes, Respondent Employer,

Fidelity & Casualty Company of New York, Respondent Carrier.

No. 1 CA–IC 1346.

Court of Appeals of Arizona, Division 1,

Department C.

April 8, 1976.

Review Denied June 22, 1976.

Ely & Bettini, Phoenix, by Joseph M. Bettini, Gorey & Gorey, Phoenix, for petitioner.

Gregory L. Folger, Chief Counsel, Phoenix, for respondent The Industrial Commission of Arizona.

Jones, Teilborg, Sanders, Haga & Parks, P. C. by Joseph L. Moore, Phoenix, for respondent employer and respondent carrier.

## OPINION

HAIRE, Chief Judge, Division 1.

On this review of an award entered by the Industrial Commission's hearing officer in a workmen's compensation proceeding, the Court is faced with an unusually difficult question as to whether the award can be sustained in view of the record and the hearing officer's findings presented to us.

Without question, the petitioner (claimant) sustained a compensable injury to his back on March 24, 1974, while lifting a nursery tree planted in a five gallon container. The respondent carrier recognized the claim as compensable, and medical benefits together with temporary compensation on the basis of an average monthly wage in the amount of $909.44 were paid. However, on September 11, 1974, the carrier issued its "Notice of Claim Status" terminating medical and temporary compensation benefits as of August 29, 1974, on the basis that the injury had become stationary on that date without any permanent disability. Thereafter, the claimant filed a timely "Request for Hearing". The requested hearing was subsequently held before the Industrial Commission's hearing officer on December 18, 1974. After the hearing, the Commission's hearing officer entered an award finding that the claimant had "failed to sustain his burden of proof in establishing that he is entitled to continuing medical benefits or that he has sustained a permanent disability as the result of his industrial injury." The hearing officer further concluded that the claimant's condition had become stationary on August 29, 1974, and entered an award

which in effect sustained the respondent carrier's notice of claim status which allowed benefits through August 29, 1974, only.

The difficulties in reviewing the evidence which we have referred to above arise from the fact that the hearing officer was faced with two sets of medical witnesses who spoke from basically two different time references. One set of medical witnesses, consisting of Doctors Sidney L. Stovall, Ronald S. Haines, and Walter Edwards, through oral testimony and written reports, gave evidence which, taken by itself, clearly supports the hearing officer's determination. These three doctors examined the claimant on August 29, 1974, and were unanimous in their conclusions that on August 29, 1974, notwithstanding the claimant's subjective complaints, he "was capable of returning to his previous work;" that he "does not have any impairment of function due to his injury of March 25, 1974;" and that "he will not benefit by any further treatment."

The other set of witnesses, Doctors Donald Ray Stamper and Buford Gregory, both osteopathic physicians, testified from a later time reference involving examinations occurring after the issuance of the carrier's notice of claim status, but prior to the hearing in this matter. Doctor Stamper, whose practice is limited to radiology, testified concerning the interpretation of a November 12, 1974, lumbar myelogram. His conclusions as stated in his written report were:

"Studies of the lumbar spinal canal by oil myelography revealed a persistent concavity within the left anterolateral aspect of the oil column at the 5th lumbar intervertebral disc space level suggesting extrinsic pressure possibly associated with retropulsed or herniated disc material."

No prior myelogram had been made. Doctor Gregory's testimony related to an examination on November 5, 1974, and subsequent surgery. The surgery consisted of the performance of a hemilaminectomy on

November 15, 1974. The doctor's description of the surgery is as follows:

"A Yes, sir. We did the hemilaminectomy and when we got to the nerve root there was a herniation of the posterio-longitudinal ligament, causing an impingement of the nerve root. We incised the ligament and cleaned out the nucleus pulposus from the disk space. There was still evidence of nerve root pressure at that time, and we explored farther and found a large fragment of the disk that had been extruded from the disk space prior to surgery and was laying actually in the canal outside the disk space, and we—and it had come out of the disk space and migrated upwards toward the head, and it was behind the posterio-longitudinal ligament. We cleaned this fragment out, and then there was no further evidence of impingement."

Doctor Gregory could not tell in terms of time specifically when the hernination took place other than in terms of it being "old" or "new", but he was of the firm opinion that the herniation was a result of claimant's injury of March 25, 1974.

In considering the record it is important to bear in mind that the ultimate issue before the hearing officer relates to the physical condition of the claimant up to the time of the hearing. *Russell v. Industrial Commission,* 104 Ariz. 548, 456 P. 2d 918 (1969). Expert testimony concerning claimant's physical condition at and prior to the time of the issuance of the carrier's notice of claim status is of course of evidentiary value, but it is not conclusive. Applying this principle to the record here presented, and bearing in mind the fact that surgery was actually performed before the hearing, and, according to Dr. Gregory's testimony, revealed a disc herniation, it would appear that the hearing officer's award can only be sustained on two theories:

(1) That the testimony of Doctors Stamper and Gregory was not credible

and that the claimant had not suffered a disc herniation, or

(2) That although claimant did suffer a disc herniation, it occurred after August 29, 1974, *and* was not causally related to the injury of March 25, 1974.

Considering the first possibility, the hearing officer made no finding to that effect, and in our opinion the evidence would not in fact support such a finding. There is no *direct evidence* which would support the second possibility. Without discussing the evidence in great detail, suffice it to say that it might be arguable that inferences could be drawn to support such a finding.

In reviewing the hearing officer's award we note that as a part of his findings, he initially sets forth many general legal principles, then sets forth a summary of the testimony of the medical witnesses. However, he makes no direct findings bearing on the issues discussed above which we deem crucial to a determination and decision under the facts presented to him. While our statutes and decisions do not require a specific finding of fact on every issue which might be involved in a hearing, they do require that the findings be of such a nature that they dispose of all the material issues. *Cammeron v. Industrial Commission,* 98 Ariz. 366, 405 P.2d 802 (1965); *Sproul v. Industrial Commission,* 91 Ariz. 128, 370 P.2d 279 (1962); *Foster v. Industrial Commission,* 46 Ariz. 90, 47 P.2d 428 (1935). Without specific findings of fact on these crucial issues, we are unable to determine whether the basis of the hearing officer's determination was legally sound. If we had the authority to do so, we would merely remand and give the hearing officer the opportunity to make findings based upon the record already before him, and then review the record to determine the sufficiency of the evidence to support those findings. However, our only authority is to affirm the award or set it aside in its entirety. *See* A.R.S. § 23–951 D.

The award is set aside.

NELSON, P. J., and EUBANK, J., concur.