631 P.2d 1094

CAVCO INDUSTRIES, Petitioner
Employer,

Industrial Indemnity Company,
Petitioner Carrier,

v.

The INDUSTRIAL COMMISSION OF
ARIZONA, Respondent,

Irieda A. Minney, Respondent Employee.

No. 1 CA–IC 2136.

Court of Appeals of Arizona,
Division 1,
Department C.

Aug. 28, 1980.

Rehearing Denied Oct. 27, 1980.

Review Granted Nov. 18, 1980.

Jennings, Strouss & Salmon, by Steven C. Lester, Phoenix, for petitioners.

Calvin Harris, Chief Counsel, The Indus. Commission of Ariz., Phoenix, for respondent.

Chris T. Johnson, P.C., by Chris T. Johnson, Phoenix, for respondent employee.

OPINION

WREN, Judge.

This Special Action—Industrial Commission challenges a determination by the hearing officer that the claimant, Irieda A. Minney, had sustained a permanent impairment to her left thumb, in addition to her left lower extremity, and was therefore entitled to receive compensation on an unscheduled rather than a scheduled basis. We set aside the award.

Claimant suffered a fractured patella of her left leg and strained ligaments of the left thumb in an industrial accident on March 18, 1974. Her claim for benefits was accepted by the carrier on April 16, 1974. Four years later, on April 14, 1978, the carrier issued notices of claim status which concluded that claimant had sustained a permanent injury to the left leg and that she was to be compensated on a scheduled basis. Claimant filed a Request for Hearing on April 24, 1978, alleging that she had also received a permanent injury to her thumb and that, because of the multiple sites of her injuries, compensation should be on an unscheduled basis. Hearings were held on August 22 and September 27, 1978, following which the hearing officer issued his Findings and Award for compensation on a scheduled basis, determining that the residuals of the industrial injury were confined to the lower left extremity. A Request for Review followed and on December 8, 1978, the modified findings complained of in this special action petition were entered, under which the hearing officer modified his previous award by finding that claimant also had a five percent permanent partial impairment of her left thumb and was therefore entitled to an unscheduled award.

Petitioners assert the following issues:

1. That the Arizona Workmen's Compensation Act no longer contains an objective articulated standard by which the existence or nonexistence of permanent impairment can be determined;

2. That the hearing officer failed to make findings that disposed of all the material issues; and,

3. That the testimony of Dr. Richard Morgan was not competent medical evidence to support the Modified Findings and Award.

The main thrust of petitioner's argument is that under two recent decisions by the

Arizona Supreme Court; *Adams v. Industrial Commission*, 113 Ariz. 294, 552 P.2d 764 (1976), *Smith v. Industrial Commission*, 113 Ariz. 304, 552 P.2d 1198 (1976), the language of Rule 13(d)[1] of the Rules of Procedure for Workmen's Compensation Hearings before the Industrial Commission of Arizona (A.C.R.R.R4–13–113(D)) has been so diluted that there no longer exists a definable standard by which the existence or nonexistence of permanent impairment can medically be determined. Petitioners correctly point out that prior to *Smith* and *Adams* an employee had a permanent impairment only if it was ratable under the American Medical Association's Guides to the Evaluation of Permanent Impairment (AMA Guides). Now, they claim, confusion exists as to whether a rating of permanent impairment must be premised upon some published or recognized criteria, or whether it can be predicated only upon the "personal belief" of the examining physician. They point to the fact that Dr. Morgan, and also the hearing officer in adopting the opinion of Dr. Morgan as to a *five percent* impairment rating of claimant's thumb, made no reference to any rating guide, and that the findings of the hearing officer thereby failed to address a material issue as required by *Garcia v. Industrial Commission*, 26 Ariz.App. 313, 548 P.2d 26 (1976).

In *Adams v. Industrial Commission*, a case involving a hearing loss, the Supreme Court held that Rule 13(d):

> ... must be so interpreted that the AMA Guides apply exclusively to the evaluation of permanent impairment to the extent that the AMA Guides cover the specific impairment and the percentage thereof. Beyond this, Rule 13(d) has no application. 113 Ariz. at 295, 296, 552 P.2d at 765, 766.

---

1. Rule 13(d):

(d) If upon discharge from treatment the physician finds that the employee has sustained an impairment of function as the result of the injury, he shall so state in his report. Any rating of the percentage of functional impairment shall be in accordance with the standards for the evaluation of permanent impairment as published by the American Medical Association in "Guides to the Evaluation of Permanent Impairment." It shall include a clinical report in sufficient detail to support the percentage ratings assigned.

In so holding the court approved the use of a Department of Labor Guide, described by medical testimony as being more accurate than the AMA Guides in rating the percentage of hearing loss. The court quoted from the AMA Guides that their purpose under Chapter VIII (ear, nose, throat and related structures) was "to assist physicians by providing criteria for use in evaluating permanent impairment ... and ... to determine the corresponding percentage of permanent impairment in the terms of the whole man." 113 Ariz. at 295, 552 P.2d at 765.

In *Smith v. Industrial Commission*, where subjective complaints of back pain could not be substantiated by the AMA Guides, the court decided that "petitioner must be given the opportunity to be rated by other criteria." 113 Ariz. at 307, 552 P.2d at 1201.

Although the issue raised here was apparently not before the court in *Chavez v. Industrial Commission*, 118 Ariz. 141, 575 P.2d 340 (App.1978), (review denied), an attack on a physician's failure to rely on the AMA Guides, as being required by Rule 13(d) and *Adams v. Industrial Commission*, was turned aside by this court with the following language:

> *Adams* only requires that the AMA Guides be used to the extent that they cover the specific impairment and provide a percentage rating therefor. None of the physicians who testified felt that AMA Guides were useful in a situation such as this where there has been a re-entry into the same surgical level as was involved in petitioner's 1966 industrial injury. We agree and decline to require medical practitioners to follow the guides where there is unanimity that they are inapplicable to the problem in question. 118 Ariz. at 144, 575 P.2d at 343.

The opinion which affirmed an award of no disability noted that one of the medical experts who had testified stated that he would not rate the impairment at more than 15 percent. However, the opinion was silent as to the use of any other guide.

Against this backdrop we analyze the medical record before us. Dr. Morgan re-lated that he made no measurements pursuant to the AMA guidelines in regard to rating claimant's left thumb. However, he testified that in determining the nature and extent of her impairment, he relied on x-rays taken on April 4, 1978, the general nature of the injury, the patient's complaint of pain when she gripped her with her hand, and degenerative changes of the IP joint. He explained that his findings were not based on any loss of motion in the thumb, and that the AMA Guides relating to the thumb concerned themselves solely with the loss of motion. In his words the AMA Guides were:

> ... very non-specific as far as anything else. They grade it up five percent for muscle loss and what have you, and basically you end up with your experience with some of these when you get out of the loss of motion, so you try and stay with the AMA for loss of motion, and when you have muscle loss or sensory loss or degenerative arthritis developing, then you have to use your experience and sort of—you have to sort of get out of the AMA Guidelines.

Dr. Maxwell MacCollum, who also examined claimant, reiterated this position.

> You use the [AMA] guide to help you perform rating. But you don't evaluate according to the guide necessarily. The guide is an aid in determining what impairment exists, if any.

Petitioners contend that if Rule 13(d) is still viable, then once it is established that the AMA Guides are not appropriate, it is incumbent upon a physician prior to determining and rating an impairment, to use other criteria. They argue that Dr. Morgan's opinion as to the five percent disability does violence to Rule 13(d) when there is no standardized criteria in the record to substantiate it or by which to measure it; or, stated another way, Dr. Morgan could not, as argued by claimant, simply "rely on his training, experience, and sound clinical judgment."

Petitioners further argue that it was incumbent upon the hearing officer to make a determination in his Modified Findings and

Award as to what standardized medical criteria was to be used in evaluating Dr. Morgan's testimony as to the existence or nonexistence of permanent impairment in claimant's thumb. Instead, they (petitioners) were left with only the hearing officer's nebulous reference to the "honest, medical opinion" of Dr. Morgan. Without published guidelines against which to measure and determine any impairment, cross-examination and meaningful rebuttal became impossible. They conclude by asserting that if it is no longer necessary in workmen's compensation cases to test or gauge the medical opinion of a physician against any definite standard, then due process is lacking to insure that decisions on permanent impairment are fairly and non-arbitrarily rendered, and that we should declare the provisions of the Arizona Workmen's Compensation Act dealing with permanent disability benefits, A.R.S. § 23–1044(B)(C)(D)(E) and (F); A.R.S. §§ 23–1045 and 23–1047, vague and unconstitutional.

The question thus becomes: must there, in every instance, be a "yardstick" against which the medical profession must relate its observations of impairment. Also, if impairment is found, must the claimant be denied compensation unless an acceptable medical guide, against which the impairment can be objectively measured and rated, is in existence? It is certainly arguable that this was the contemplation of the Industrial Commission in adopting Rule 13(d).

In the record before us there was no reference whatsoever to the existence of an applicable, objective, measuring standard other than the AMA Guides. We find therefore, that under the narrow facts of this case, Dr. Morgan's impairment rating falls within the parameters of *Adams* and *Smith* and justifies a rating not encompassed within the AMA Guides, and that there was no necessity for reference to

some other recognized testing guide. Dr. Morgan explained the nonapplication of the AMA Guides to the situation here, and further explained that he had to fall back on his experience since the impairment was of a very minimal nature; *one which could only be rated by medical expertise* as to the degree of degenerative changes of the IP joint and its effect upon gripping ability. We therefore reject petitioners' argument on vagueness and unconstitutionality.[2]

Petitioners further attack the credibility of Dr. Morgan's testimony on permanent impairment of the left thumb since he concluded, in his report of April 4, 1978, that petitioner had *no permanent impairment* in the thumb area. Then, at the hearing on August 22, 1978, he testified that claimant had in fact sustained a five percent impairment to her thumb. In support of this testimony, claimant offered into evidence the April 19, 1978, report of Dr. Morgan which had not been previously filed with the Commission. In this letter report, addressed to claimant's counsel, Dr. Morgan wrote:

April 19, 1978
Chris T. Johnson
934 West McDowell Road
Phoenix, Arizona  85007
   Re:  Irieda Minney
   Date of Injury:  3/18/74
Dear Mr. Johnson:

Mrs. Minney was in the office on the 4th of April, 1978. The problem referrable to the left thumb and the left leg were discussed with the patient. She does have some degenerative changes of the left thumb and very minimal functional loss of this thumb. It was elected to give the patient primarily her disability referrable to her left leg. This was so done.

From your letter, it appears that you wish to have this patient have an unscheduled disability.

2. The percentage of impairment is relatively unimportant for unscheduled injuries since it is only one of several factors to be considered in arriving at a permanent disability. A.R.S. § 23–1044(D). The amount of compensation is determined by the claimant's reduction in earn-

ing capacity. A.R.S. § 23–1044(C). In the scheduled injury area the percentage of impairment is all-important since the legislature has translated the percentage into a fixed rate of permanent disability. A.R.S. § 23–1044(B).

Therefore, I feel this patient has a 5% functional loss of the left thumb. Computing this to the hand, it is a 2% which computes to a 2% functional loss of the upper extremity and a 2% loss of the upper extremity computes to the 1% loss of the whole person. Calculating a 20% functional loss of the lower extremity equals an 8% functional loss of the whole person. Therefore, this patient has a total disability equivalent to a 9% functional loss of the whole person.

I hope this will further clarify my evaluation of this patient's condition.

Sincerely,

/s/ Richard L. Morgan, M.D.

■ On cross-examination as to the reason for this change of opinion, Dr. Morgan explained that when he examined claimant on April 4, 1978, he felt that she had such a minimal impairment that she could either be given a no permanent impairment rating or a minimal impairment rating; that it "could go both ways." He related that: "I told her, ... you have a very minimal disability in your thumb, hardly any; I mean, as little as we could give you." He then rated her as having no impairment. The doctor thereafter received a letter from claimant's counsel informing him that a scheduled award amounts to very little money in industrial cases, and that claimant should be rated with every minimal disability that she had. The doctor testified that he then picked five percent as the least amount he could give.

This letter from claimant's counsel to Dr. Morgan following the April 4, rating of no thumb disability was not submitted into evidence. However, in the Request for Review claimant's counsel stated:

... My letter to the doctor simply indicated that if she had a five percent disability to the thumb she is entitled to an award for unscheduled disability benefits....

It is thus readily apparent from the documentary evidence that Dr. Morgan informed the claimant that he would structure his medical report in accordance with her choice as to whether she wanted a scheduled or unscheduled award, and that he changed his report of April 4, 1978, to permit an unscheduled award only after receiving the letter. This change of medical opinion as to claimant's thumb impairment was rejected by the hearing officer in his original Findings and Award of October 5, 1978, with the following language:

... the law has not yet evolved to a point where a physician's desire to obtain benefits for his patient is a legitimate criteria for him to use in evaluating permanent impairment attributable to an injury.

We concur with this observation. Either there was a ratable disability in the thumb, albeit minimal, or there was not. To leave the ultimate determination of that crucial fact to the claimant rather than the examining physician, does violence to the entire concept of workmen's compensation benefits.

Such facts can furnish no legal or medical predicate for the modification to a five percent permanent disability rating and the unscheduled award. Whatever the basis for the initial report that the thumb had sustained no permanent disability, the subsequent *reason* for changing it to a five percent rating of permanent impairment can find no justification in Workmen's Compensation Law. An award based thereon is not consonant with the standard of reasonableness expressed in *Lopez v. Industrial Commission*, 9 Ariz.App. 326, 451 P.2d 904 (1969).

Nor do the "Revised Findings" of the hearing officer salvage it from the stigma of impeached evidence.

... thus, rather than the evidence establishing that [Dr. Morgan] came up with an after-the-fact thumb rating solely for the purpose of obtaining benefits for the applicant, it establishes that originally his honest medical opinion was that there was a ratable thumb impairment which he did not report for the reason stated.

We agree with petitioners that this "honest medical opinion" cannot fly in the face of the fact that Dr. Morgan, who had personally observed all medical facts upon

which his conclusion was based, had previously, on the same facts, made a specific medical conclusion of no disability, and therefore no functional impairment.

It might also be noteworthy at this point to state that the other examining physician, Dr. MacCollum, found no ratable impairment in claimant's thumb; that she was evaluated at the Southwest Disability Evaluation Center on November 19, 1975, and the group report concluded that there was no objective evidence of any impairment to the thumb; that during the period from August 1975 to April 1978, Dr. Morgan did not treat the thumb in any manner, and even testified that claimant's range of motion was normal and that she had not sustained any muscle or sensory loss.

Award set aside.

JACOBSON, P.J., and HAIRE, J., concur.