631 P.2d 1087

CAVCO INDUSTRIES, Petitioner
Employer,

Industrial Indemnity Company,
Petitioner Carrier,

v.

The INDUSTRIAL COMMISSION OF
ARIZONA, Respondent,

Irieda A. Minney, Respondent Employee.

No. 15160–PR.

Supreme Court of Arizona,
In Banc.

July 10, 1981.

**430**

Jennings, Strouss & Salmon by Steven C. Lester, Phoenix, for petitioners.

Calvin Harris, Chief Counsel, The Indus. Commission, Phoenix, for respondent.

Chris T. Johnson, Phoenix, for respondent employee.

**STRUCKMEYER, Chief Justice.**

This matter arises out of a petition to review a Court of Appeals decision holding that the medical opinion on which an award of the Industrial Commission was based was incredible. *Cavco Industries v. Industrial Commission,* 129 Ariz. 436, 631 P.2d 1094 (App.1980). Jurisdiction was accepted pursuant to A.R.S. § 12–120.24. Opinion of the Court of Appeals vacated. Award of the Industrial Commission affirmed.

Respondent Irieda Minney (hereafter respondent) was involved in an industrial accident on March 18, 1974 in the course of her employment with petitioner employer, Cavco Industries. Her injuries consisted of a fracture of her left patella (knee cap) and strained ligaments in her left thumb. Petitioner carrier accepted respondent's claim for benefits. Four years later it issued a Notice of Claim Status determining that respondent had a permanent impairment of her left leg which entitled her to scheduled compensation. Respondent filed a request for hearing. At the hearing, the impairment in the function of her left knee was not disputed. The only issue was whether there was a permanent impairment to her left thumb which when combined with the leg impairment would give rise to unscheduled compensation. See *Engle v. Industrial Commission,* 77 Ariz. 202, 269 P.2d 604 (1954).

The hearing officer originally found no impairment to the thumb, rejecting the medical opinion of Richard L. Morgan, M.D. and accepting another physician's finding of no impairment. On a request for review, the hearing officer reversed himself, accepted Dr. Morgan's finding of an impairment to the left thumb, and gave respondent an award for unscheduled injuries.

Petitioners' position is that the award must be aside because "Dr. Morgan's testimony is so suspect that, as a matter of law, it cannot afford a basis" for the award. The premise of petitioners' position is that on April 4, 1978, Dr. Morgan concluded there was no permanent impairment of the thumb. Petitioners contend that after being informed by respondent's attorney that such an impairment would give her an unscheduled award, the doctor changed his opinion and gave her a five percent impairment rating. For support, petitioners point to the doctor's April 4th medical report and his April 18th letter to respondent's attorney.

In his April 4th medical report, Dr. Morgan wrote:

"The patient's left thumb does not bother her unless she does any heavy gripping.

X-rays were taken which demonstrate some minimal degenerative changes of the IP joint. The patient has no loss of motion of this joint.

This patient's condition is now orthopaedically stationary. There is no need for further examinations or treatments. The patient can now be discharged with a permanent partial disability equivalent to 20% functional loss of the left leg."

In the letter of April 19th, Dr. Morgan wrote:

"Mrs. Minney was in the office on the 4th of April 1978. The problem referrable to the left thumb and the left leg were discussed with the patient. She does have some degenerative changes of the left thumb and very minimal functional loss of this thumb. It was elected to give the patient primarily her disability referrable to her left leg. This was so done.

From your letter, it appears that you wish to have this patient have an unscheduled disability.

Therefore, I feel this patient has a 5% functional loss of the left thumb. * * * I hope this will further clarify my evaluation of this patient's condition."

■ It is true that the April 4th report contains no indication of an impairment rating for the thumb. But this fact is not conclusive. It does not necessarily follow that on April 4th Dr. Morgan held an opinion that there was no impairment, and that he later created or changed his opinion to increase respondent's benefits.

Dr. Morgan's testimony at the hearing establishes that the petitioners' premise that on April 4th Dr. Morgan held a medical opinion of no permanent impairment to the thumb is incorrect. Rather, we believe the evidence substantially supports the hearing officer's modified finding. This finding provides:

"8. * * * that at the time of [Dr. Morgan's] April, 1978 rating, and before he received imput from the applicant or her counsel relative to the type of rating desired, it was in fact his medical opinion that there was at least a minimal, residu-al impairment of the thumb, but he was reluctant to report it because he felt that it would not provide applicant with permanent disability benefits; thus, rather than the evidence establishing that he came up with an after-the-fact thumb rating solely for the purpose of obtaining benefits for the applicant, it establishes that originally his honest medical opinion was that there was a ratable thumb impairment which he did not report for the reason stated."

This finding followed from Dr. Morgan's testimony in which he explained the reason for not noting the thumb rating in his April 4th report.

"Q. Is there any reason why on April 4, 1978, you discharged Mrs. Minney with no impairment to the left thumb, and instead put the twenty percent impairment solely to the left leg?

A. Yes.

Q. Why was that?

A. I told her that if you do have some minimal degenerative changes of your thumb, and *you have some disability or functional loss referable to your left thumb*, and if I discharge you with that, you'll be discharged with a general disability. Basically its very minimal referable to the thumb. Your major disability is referable to your leg, and if you get a scheduled disability, then you will receive money for that and it will have no basis on earning capacity. And I also, I put down here, will dictate after patient calls. And I explained this all to her, and I told her if you want a general disability based on her incapacity, call me back and I'll calculate it out like I did in that letter, or if you want to let it stand as a scheduled disability, that's the way it will be.

Q. So, you were going to let her decide?

A. I told her, you could go both ways, *you have very minimal disability in your thumb*, hardly any; I mean, as little as we could give you.

Q. So you gave her the scheduled, and then you received a letter from Mr. Johnson [respondent's attorney]?

A. That is correct.

Q. And Mr. Johnson wanted it to be rated on a non-scheduled basis?

A. *He said* if there is any disability referable to any other part of the body, then it would be an unscheduled disability, and *to rate her totally true with every minimal disability that she has, she should have had a general functional loss of the whole person.*

Q. And did you—or did Mr. Johnson indicate whether or not he felt an unscheduled would get Mrs. Minney more money?

A. All he said to me—let's see—he said scheduled awards amount to almost no money in these industrial cases. If there is any difficulty in any other part of the body in the above-entitled case, with the exception of the left leg, the award automatically is unscheduled. And then he went on to say referable to the unscheduled part of this—and he really doesn't mention that Mrs. Minney will get more money." (Emphasis added.)

▪ Pursuant to A.C.R.R. R–4–13–113(D), Rules of Procedure for Workmen's Compensation Hearings before the Industrial Commission of Arizona (former Rule 13(d)), all permanent impairments should be reported. But the failure to strictly comply with the rule cannot be held to be conclusive evidence that no impairment exists. "Rule 13(d) may not be interpreted in such a manner as to deprive a claimant of just compensation." *Smith v. Industrial Commission*, 113 Ariz. 304, 306, 552 P.2d 1198 (1976).

Our holding is not predicated on Dr. Morgan's credibility, but, rather, because the record must be read in the light most favorable to sustaining the award. See *Salt River Project v. Indus. Com'n of Ariz.*, 128 Ariz. 541, 627 P.2d 692, 695–696 (1981). The record supports the hearing officer's finding that Dr. Morgan believed on April 4, 1978 that respondent's left thumb was impaired and that he did not fabricate an opinion to gain her an unscheduled award.

Petitioners complain that Dr. Morgan in reaching his opinion on impairment did not follow the American Medical Association's "Guides to the Evaluation of Permanent Impairment." We have previously referred to the rule of procedure of the Industrial Commission, A.C.R.R. R–4–13–113(D), which provides:

"If upon discharge from treatment the physician finds that the employee has sustained an impairment of function as the result of the injury, he shall so state in his report. Any rating of the percentage of functional impairment shall be in accordance with the standards of the evaluation of permanent impairment as published by the American Medical Association in 'Guides to the Evaluation of Permanent Impairment'. It shall include a clinical report in sufficient detail to support the percentage ratings assigned."

▪ In *Adams v. Industrial Commission*, 113 Ariz. 294, 552 P.2d 764 (1976), and *Smith v. Industrial Commission*, supra, this Court recognized that Rule R–4–13–113 (former Rule 13(d)) does not require a finding of permanent impairment to be based only on the results of tests contained in the AMA Guides. The AMA Guides apply only where they cover the specific impairment and where the percentage of impairment contained therein truly reflects the claimant's loss. See *Adams v. Industrial Commission*, supra; *Smith v. Industrial Commission*, supra. These holdings recognize the plain wording of the rule of procedure and the non-exclusiveness of the AMA Guides as to the determination and rating of permanent impairments.

The AMA in the Preface to its Guides gives this definition of permanent impairment, which was accepted in *Smith*:

" * * * *Permanent impairment is any anatomic or functional abnormality or loss* after maximal medical rehabilitation has been achieved, which abnormality or loss the physician considers stable or nonprogressive at the time evaluation is made. * * *." American Medical Association, "Guides to the Evaluation of Permanent Impairment", page iii (1971), quoted in

*Smith v. Industrial Commission*, supra, 113 Ariz. at 305, n. 1, 552 P.2d 1198. (Emphasis added.)

The guide pertaining to the thumb provides only two tests for the determination of a permanent impairment. One test measures restriction of motion and the other measures ankylosis or joint stiffness. The guide sets forth uniform impairment ratings for these two impairments and for amputations. But this does not mean that the only impairments of the thumb are loss of motion, ankylosis or amputation. The guide covering the thumb provides:

"Additional or less objective procedures may be considered desirable in specific cases." American Medical Association, "Guides to the Evaluation of Permanent Impairment", "The Extremities and Back", p. 1.

Dr. Morgan assigned a permanent impairment to respondent's thumb because he noted on X-rays a degenerative change, a loss of joint space, at the interphalangeal joint which suggests the development of arthritis. His conclusion was also based on respondent's statement that she experienced pain with heavy gripping.[1] There was no sensory loss or muscle loss. There was also no restriction of movement or ankylosis. Even though no test in the AMA Guides would indicate an impairment, Dr. Morgan's finding of an impairment is in accord with the AMA's definition of that term since a loss of joint space or degenerative change of a joint is an "anatomic * * * abnormality."[2]

In his testimony, Dr. Morgan explained the non-applicability of the AMA Guides to respondent's condition.

"Q. When you have done—well, first of all, it's my understanding under the

AMA Guidelines there are specific tests for rating permanent impairment in the thumb; some are in relation to the IP joint, others to the MP joint, and combination factors; is that correct?

A. Yes, loss of motion, degenerative—there is nothing in there specifically about degenerative changes, but when you do have degenerative changes, you do have functional loss of the joint. The AMA Guidelines is primarily loss of motion, which is one modality of disability rating.

\* \* \* \* \* \*

Q. So, under the AMA Guidelines, motion-wise, she would have no permanent impairment?

A. Motion is one modality of functional loss, and that is correct, that would be normal.

Q. Do the AMA Guidelines provide for any other type of rating, other than loss of motion?

A. They're very non-specific as far as anything else. They grade it up five percent for muscle loss and what have you, and basically you end up with your experience with some of these when you get out of the loss of motion, so you try and stay with the AMA for loss of motion, and when you have muscle loss or sensory loss or degenerative arthritis developing, then you have to use your experience and sort of—you have to sort of get out of the AMA Guidelines."

Since the AMA Guides did not cover the specific impairment involved here, the Guides did not apply. Dr. Morgan could utilize means other than the AMA Guides to determine and rate the thumb impairment.

1. Both petitioners' and respondent's counsel state in their briefs that Dr. Morgan's finding of impairment was based on a loss of gripping strength. Dr. Morgan never himself stated that there was a loss of gripping strength. His finding was solely that when Mrs. Minney "would make a very forceful grip referable to her thumb, it would hurt her." Mrs. Minney was the one who testified to a loss of strength.

2. The AMA also states in the preface to its guides:

"* * * permanent impairment can be measured with a reasonable degree of accuracy and uniformity, *as it is evidenced by loss of structural integrity*, loss of functional capacity, or persistent pain that is substantiated by clinical findings." American Medical Association, "Guides to the Evaluation of Permanent Impairment," "Preface," page iii.

■ Petitioners argue even if Dr. Morgan could utilize means other than the Guides, his opinion is still incompetent since he only examined X-rays and accepted respondent's statements of subjective pain. Petitioners claim the results of such an examination must be doubted since the examination did not meet generally accepted medical procedure. Petitioners point to another doctor's statement that an impairment rating could not be based on an X-ray alone. This doctor's testimony was that an examination for an impairment *in general* requires more than a viewing of X-rays. It also involves the use of guidelines such as the AMA's Guides. This physician, however, did not testify that a determination of the type of impairment suffered by respondent could not be made solely on examining X-rays. Dr. Morgan's finding of an impairment is not incompetent simply because he had to rely on his training, experience and judgment in the absence of published guidelines.

Petitioners contend that if the Arizona Workmen's Compensation Act and the regulations promulgated under it do not contain a reference to guidelines and if the Act does not require that findings of impairment be based on such guidelines, the Act is unconstitutionally vague and a denial of due process since it provides no notice to them and sets forth no limit on the administrative agency's discretion.

■ Petitioners are correct in asserting that a vague statute may violate due process because it either fails to give fair warning or lacks standards to restrict the discretion of those who apply it. See *Giaccio v. State of Pennsylvania*, 382 U.S. 399, 402–

403, 86 S.Ct. 518, 520–521, 15 L.Ed.2d 447 (1966); *Stamus v. Leonhardt*, 414 F.Supp. 439, 451 (S.D. Iowa 1976).[3] But petitioners' theory of want of adequate notice is without merit because it has application only where there is a regulation of or sanction for conduct. *Boutilier v. Immigration & Naturalization Serv.*, 387 U.S. 118, 123, 87 S.Ct. 1563, 1566, 18 L.Ed.2d 661 (1967); *Stamus v. Leonhardt*, supra at 451–452: see generally, Note, "The Void-For-Vagueness Doctrine in the Supreme Court", 109 U.Penn.L.Rev. 67 (1960). The Arizona statute A.R.S. § 23–1044 does not regulate or proscribe conduct.

■ Mandatory reference to published, objective guidelines is not required to fulfill the due process prohibition against vague statutes which allow arbitrary and discriminatory application. The Court of Appeals rejected a vagueness challenge to this state's general assistance statute which provided benefits to those "not employable." It was held that sufficient guidance was given to the administrative agency by a regulation which stated:

"'If a person works, he is ineligible. If the Medical Consultant determines he is capable of working, he is ineligible.'" *Herrera v. Jamieson*, 124 Ariz. 133, 135, 602 P.2d 514 (1979).

In the instant case, sufficient guidance is given to the Industrial Commission by the definition of permanent impairment contained in *Smith v. Industrial Commission*, supra, 113 Ariz. at 305, n. 1, 552 P.2d 1198, to guard against arbitrary and irrational findings of impairment.[4]

3. Petitioners quote *State Compensation Fund v. De La Fuente*, 18 Ariz.App. 246, 501 P.2d 422 (1972), *review denied* 109 Ariz. 439, 511 P.2d 621 (1973), where the Court of Appeals noted that this Court recognized in *Southwest Engineering Co. v. Ernst*, 79 Ariz. 403, 291 P.2d 764 (1955), two other "void for vagueness" doctrines independent of due process. One doctrine is that an indefinite statute imposing a duty on a public officer is an undue delegation of legislative power violative of Article 4 of the Arizona Constitution. The other doctrine is the simple common law rule that courts will not apply unintelligible laws. While petitioners

quote *State Compensation Fund v. De La Fuente*, supra, they do not contend the Act violates either of these doctrines.

4. In *Smith v. Industrial Commission*, supra at 307, n. 4, 552 P.2d 1198, we pointed out:

"The percentage of impairment is relatively unimportant for unscheduled injuries since it is only one of several factors to be considered in arriving at a permanent disability. A.R.S. § 23–1044(D). The amount of compensation is determined by the claimant's reduction in earning capacity. A.R.S. § 23–1044(C)."

Petitioners assert that the hearing officer's findings and award are not legally sufficient since he did not specify what "criteria" or guidelines were used to determine respondent's impairment of her left thumb. They urge that the whole award must fail in the absence of a specific finding as to how the finding of impairment was determined.

However, in *Foster v. Industrial Commission*, 46 Ariz. 90, 92, 47 P.2d 428 (1935), this Court said:

"The Compensation Law of this state * * * does not expressly require that the Industrial Commission make specific findings in a case like this. In this respect it follows the law of Utah, and the Supreme Court of that state has held that, while it is advisable that complete findings should be made, they are not essential to a valid award. (Citations omitted) We are of the opinion that it is not essential under our statute that specific findings of fact be made on every issue which might be involved in a hearing, provided that the findings as made are of such a nature that they necessarily dispose of all the material issues involved."

In *Graver Tank & Manufacturing Co. v. Industrial Com'n*, 96 Ariz. 34, 391 P.2d 589 (1964), the major material question was the cause of death of the claimant's husband. The Industrial Commission made no finding on this issue, but did make the ultimate finding that he died as the result of an injury arising out of his employment. This Court affirmed the award, holding that the only findings required are those of ultimate facts and the "Commission need not set forth the separate findings on the evidentiary facts which lead to a determination of the ultimate fact." *Id.* at 38, 391 P.2d 589.

■ It is clear that the lack of findings on material issues does not invalidate an award *per se.* It may be vacated if the reviewing court is unable to determine whether the basis of the hearing officer's conclusion was legally sound. See *Garcia v. Industrial Commission*, 26 Ariz.App. 313, 315, 548 P.2d 26 (1976); *Van Duzee v. Industrial Commission*, 25 Ariz.App. 395, 543 P.2d 1152 (1975); *ASARCO, Inc. v. Industrial Commission*, 122 Ariz. 241, 594 P.2d 107 (App.1979). *Compare Cammeron v. Industrial Commission*, 98 Ariz. 366, 405 P.2d 802 (1965), and *Sproul v. Industrial Commission*, 91 Ariz. 128, 370 P.2d 279 (1962), with *Foster v. Industrial Commission*, supra.

■ The ultimate issue here was whether respondent suffered from a permanent thumb impairment. An affirmative finding was made on that issue. A specific finding was unnecessary as to how the ultimate finding was reached since it can be determined from an examination of the record.

The award of the Industrial Commission is affirmed.

HOLOHAN, V. C. J., and CAMERON and GORDON, JJ., concur.

HAYS, Justice, specially concurring.

I am compelled to concur in the result reached by the majority opinion. However, I am disturbed, as was the Court of Appeals, with a situation where the claimant's lawyer and the doctor discuss the structuring of a medical report to attain the best recovery. The infirmity of such evidence is apparent but the finder of fact failed or refused to see it. It is not appropriate for this court to substitute its assessment of the credibility of the evidence for that of the hearing officer.

I concur in the result.