714 P.2d 455

Eliseo VILLANUEVA, Petitioner,

v.

The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,

Bechtel Power Corporation, Respondent Employer,

Industrial Indemnity Company, Respondent Carrier.

No. 1 CA–IC 3259.

Court of Appeals of Arizona, Division 1, Department B.

Nov. 26, 1985.

Motion for Reconsideration Denied Jan. 24, 1986.

Lawrence P. Nicholls, P.C. by Lawrence P. Nicholls, Phoenix, for petitioner.

Dennis P. Kavanaugh, Chief Counsel, Indus. Com'n of Arizona, Phoenix, for respondent.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, P.A. by Larry L. Smith and Donald L. Cross, Phoenix, for respondent Employer and respondent Carrier.

OPINION

CONTRERAS, Judge.

This review challenges an Industrial Commission decision and award denying the claimant's petition to reopen his work-

er's compensation claim.[1] The denial was based on the administrative law judge's resolution of a conflict he found to exist in the medical evidence. The determinative question is whether a specific finding must be made by the administrative law judge regarding the claimant's credibility. Where, as in this case, the determination that a conflict in the medical evidence existed can only be supported if the claimant's testimony was not credible, we conclude that the claimant's credibility was a material issue and a specific finding is required. Since there was no specific finding, we set aside the Industrial Commission award.

The relevant facts follow. On June 16, 1982, claimant suffered an industrial injury to his right shoulder while working for Bechtel Power Company. He filed a claim for benefits which was accepted by the respondent carrier.

Claimant was referred to Robert S. Barbosa, D.O., for treatment of a possible rotator cuff tear. After performing an orthrogram, Dr. Barbosa diagnosed the injury as impingement syndrome of the right rotator cuff rather than a rotator cuff tear. The claimant received conservative treatment for the impingement syndrome. Dr. Barbosa's report of November 30, 1982 stated that claimant "is asymptomatic from his right shoulder discomfort at this point."

Dr. Barbosa released claimant from his care in February, 1983, noting "[h]e is totally asymptomatic from the right shoulder, and he is discharged from my care at this time with no evidence of permanent physical impairment." Claimant's claim for benefits was closed as of February 16, 1983, following a Notice of Claim Status issued by the respondent carrier.

After going swimming in June of 1983, claimant experienced pain in the same shoulder and returned to Dr. Barbosa for additional treatment. On July 1, 1983,

claimant filed a petition to reopen his claim. The petition was denied by the respondent carrier on July 20, 1983, and claimant filed a timely request for hearing.

At Industrial Commission hearings, the claimant and two doctors testified. Dr. Barbosa, claimant's treating physician, opined that the claimant had sustained an exacerbation of the pre-existing impingement syndrome condition and that the exacerbation was directly related to the industrial injury of June, 1982. Prior to hearing and at the carrier's request, Dr. Irwin Shapiro examined claimant and wrote a medical report based on that examination. He also diagnosed claimant's condition as impingement syndrome. In Dr. Shapiro's opinion, the recurrence of petitioner's symptoms could not be attributed to the industrial injury of June, 1982. It is clear from the record that Dr. Shapiro based his opinion in part on Dr. Barbosa's determination that claimant was "asymptomatic" in February 1983 and on Dr. Shapiro's understanding that claimant had remained totally asymptomatic until his visit to Dr. Barbosa following the swimming incident approximately seven months later.

The administrative law judge concluded that a conflict in the medical evidence existed, resolved the conflict in favor of Dr. Shapiro's opinion, and denied the petition to reopen.

Although Dr. Shapiro testified at the hearing, Finding No. 9 of the Decision upon Hearing and Findings and Award Denying Reopening quotes directly from his previously issued written medical report based on his December 16, 1983 examination of claimant.

"After review of this gentleman's history and his physical examination, as well as his medical records, it appears the patient was asymptomatic with reference to his right shoulder from November all the way through until June. The pain in the

---

1. A.R.S. § 23–1061(H) sets forth the requirements for reopening, stating in part:

  An employee may reopen his claim to secure an increase or rearrangement of compensation or additional benefits by filing with the commission a petition requesting the reopening of his claim upon the basis of new, additional or previously undiscovered temporary or permanent condition, which petition shall be accompanied by a statement from a physician setting forth the physical condition of the employee relating to the claim.

shoulder only occurred following swimming.

It would be my impression that the patient's complaints are due to a mild impingement syndrome of the right shoulder. I cannot, however, attribute this present impingement to the incidents of June 16, 1982, but it certainly appears that he went approximately seven to seven and one-half months without pain and the symptoms only recurred after doing elevation of the right arm positioning in swimming that would cause a recurrence of his symptomatology.

Therefore, it would be my opinion that the patient's present complaints are related to the swimming episode rather than to the incident in question."

Claimant testified at the January 24, 1984 hearing that after his release from Dr. Barbosa's care in February, 1983:

"... I felt pretty good, and I could comb my hair. I could lift up my arm the way I am now. But occasionally, especially when I was in bed trying to go to sleep, that's when I would have some pain in my shoulder. And in all that time, that's the way I was feeling."

The hearing at which Drs. Barbosa and Shapiro testified took place on March 15, 1984. Based on claimant's previous testimony at the January hearing, the following cross-examination of Dr. Shapiro was conducted by claimant's counsel.

Q. Doctor, would your opinion change if you were informed that even after the time that Dr. Barbosa discharged him in February, 1983, that since that time and even until June when this arm really started hurting, that during that interval of time that occasionally, and especially when he was in bed trying to go to sleep, that he would have some pain in that same shoulder, and that this persisted from the time that he was released in February up until the June episode?

MR. CROSS: Object: foundation; contrary to the facts in evidence.

MR. NICHOLLS: It's not. I'm reading it right from the transcript on page 9.

JUDGE GHAREEB: He may answer.

THE WITNESS: If his discomfort was on a continuing basis from the time that he was—that I first had records that he was described as being asymptomatic, then I can only state that obviously he had ongoing persistent symptoms. But again, I'm relying on what the past medical records have stated from November of 1982.

Q. BY MR. NICHOLLS: I agree, Doctor. He didn't go in to the doctor or anything with these complaints, but those are the complaints he did have. Now, assuming that to be correct and true, that he was still having problems and bothered by this shoulder, and in fact didn't do any heavy work at all since the time of the injury, would your opinion then change as to whether or not his problems for which he was being treated in June of '83 were related to that original injury?

.     .     .     .     .

THE WITNESS: If the patient had continuing symptoms consistent throughout the entire course of time, he did not have a period of seven and a half months, then I would have to say it was attributable to whatever happened in June of '82.

The administrative law judge's findings make no reference to the testimony by claimant or that of Dr. Shapiro on cross-examination. The administrative law judge, in apparent reliance on Dr. Shapiro's direct testimony and his previously submitted medical report, found a conflict with Dr. Barbosa's medical opinion, and resolved the conflict in favor of Dr. Shapiro's opinion.

■ After reviewing the record, we conclude that in order for the administrative law judge to determine that a conflict in the medical evidence existed, he must have found that claimant's testimony lacked credibility. We so conclude because if the claimant was credible, then he did experience continuing symptoms during the months following his release from Dr. Barbosa's care and, as shown on cross-examination, Dr. Shapiro would agree with Dr. Barbosa that the claimant's condition after swimming was related to the original in-

dustrial injury.[2] It is clear that Dr. Shapiro's opinion was predicated on his understanding that claimant was totally asymptomatic from the time he was discharged in February 1983 to the time of the swimming incident. In expressing his opinion on direct examination, Dr. Shapiro stated "... it was my opinion that since the patient had a period of ... seven months in which he was *totally* asymptomatic, that I could not attribute the recurrence of his symptoms in the right shoulder to the episode which occurred in June of 1982...."

Thus, if petitioner was credible, the medical testimony of both doctors relates his present complaints to his previous industrial injury and the petition to reopen should have been granted. On the other hand, if the claimant was not credible, a conflict in the medical testimony could be found by the administrative law judge and resolved as it was here, which would result in the denial of the petition to reopen. In either case, the credibility issue was material and should have been directly and specifically addressed and resolved by the administrative law judge.

The Industrial Commission is responsible for weighing the evidence and making findings on questions of fact, which include the credibility of witnesses. *Malinski v. Industrial Commission*, 103 Ariz. 213, 439 P.2d 485 (1968); *Valdon v. Industrial Commission*, 103 Ariz. 547, 447 P.2d 239 (1968); 3 A. Larson, *Worker's Compensation Law* § 80.21 at 15–426.423 (1983). The credibility determination is beyond the limited role of the reviewing court. *See, e.g., Perry v. Industrial Commission*, 112 Ariz. 397, 542 P.2d 1096 (1975).

Although the Arizona Workers' Compensation statutory and decisional law does not require a specific finding on every issue that might be involved in a hearing, it does require that findings which are made dispose of all material issues. *Garcia v. Industrial Commission*, 26 Ariz.App. 313, 548 P.2d 26 (1976) (citing *Cammeron v. Industrial Commission*, 98 Ariz. 366, 405 P.2d 802 (1965); *Sproul v. Industrial Commission*, 91 Ariz. 128, 370 P.2d 279 (1962); *Foster v. Industrial Commission*, 46 Ariz. 90, 47 P.2d 428 (1935)).

■ The Commission has very broad discretion in its decision-making function, but if it refuses to follow uncontradicted evidence in the record, it must state the reasons for doing so. *Larson, supra*, at § 80.23 (citing *Garcia v. Industrial Commission, supra*). Some explanation must be given in the findings when uncontradicted relevant evidence in the record is disregarded, as for example "when the Commission denies compensation on a record that contains nothing but testimony favorable to claimant, with no indication whether all or part of the testimony was disbelieved, and if so, why." *Larson, supra*, § 80.23 at 15–426.465–483.

In *Garcia, supra*, this court set aside an award because the hearing officer made no direct findings bearing on issues which the court deemed crucial to the decision. The court identified two theories that could possibly support the decision, only one of which was supported by the evidence. Without specific findings, the court was unable to determine whether there was a legally sound basis for the result.

In *Cavco Industries v. Industrial Commission*, 129 Ariz. 429, 631 P.2d 1087 (1981), the supreme court did not require a specific finding as to how the ultimate fact was reached (i.e., that the respondent employee had suffered a permanent impairment) because it could be determined from an examination of the record. However, the court recognized that an award will be vacated for lack of findings on material issues in cases where "... the reviewing

---

**2.** In their brief, respondents insist that claimant's description of his pain was not the "continuing consistent pain" contemplated by Dr. Shapiro which would enable him to find a causal relationship. However, the questioning of Dr. Shapiro on redirect examination fails to clarify his opinion or his use of the term "continuing symptoms." In addition, the re-direct

examination did not bring claimant's testimony, upon which the key cross-examination questions were predicated, or claimant's credibility, into question. It merely confirmed that Dr. Shapiro's original opinion on direct examination was based on the medical history contained in Dr. Barbosa's patient notes or elicited from the claimant during his physical examination.

court is unable to determine whether the basis of the hearing officer's conclusion was legally sound." *Id.* at 435, 631 P.2d at 1093.

Given the record in the immediate case, and the lack of a specific finding regarding claimant's credibility, we are unable to determine whether the basis of the administrative law judge's determination was legally sound. In fact, an examination of the record, assuming claimant's credibility, indicates that the administrative law judge reached an incorrect conclusion. Only if the administrative law judge found claimant not credible could he ignore claimant's testimony and Dr. Shapiro's cross-examination and reach the result that a conflict in medical opinions existed. Therefore, in accordance with *Cavco* and *Garcia,* claimant's credibility was a material issue and a specific finding that claimant was credible or lacked credibility was necessary in this case.

The award is set aside.

MEYERSON and FROEB, JJ., concur.