NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STEVEN BOYD, *Petitioner Employee*,

*v.*

THE INDUSTRIAL COMMISSION OF ARIZONA, *Respondent,*

DURASERV CORP DBA COOKSON DOOR SALES OF ARIZONA,
*Respondent Employer*,

LIBERTY INSURANCE CORP, *Respondent Carrier*.

No. 1 CA-IC 23-0014

FILED 10-17-2025

Special Action - Industrial Commission
ICA Claim No. 20222000030
Carrier Claim No. WC608-F94505
The Honorable Trudy Rushforth, Administrative Law Judge

**AWARD SET ASIDE**

COUNSEL

George V. Sarkisov, PLLC, Phoenix
By George V. Sarkisov
*Co-Counsel for Petitioner Employee*

Toby Zimbalist, SBA, Phoenix
By Toby Zimbalist
*Co-Counsel for Petitioner Employee*

Industrial Commission of Arizona, Phoenix
By Afshan Peimani
*Counsel for Respondent*

Lundmark Barberich La Mont & Puig PC, Phoenix
By Lisa M. LaMont, David T. Lundmark
*Counsel for Respondent Employer and Carrier*

---

## MEMORANDUM DECISION

Presiding Judge Andrew M. Jacobs delivered the decision of the Court, in which Vice Chief Judge David D. Weinzweig joined. Judge Jennifer M. Perkins dissented.

---

**J A C O B S**, Judge:

**¶1**       Steven Boyd worked as a service technician, with duties that included lifting and installing heavy operators of overhead doors.  He asks this court to set aside an Industrial Commission of Arizona ("ICA") award denying his workers' compensation claim for failing to promptly report an injury suffered while lifting a heavy door.  He argues: (1) the award's conclusion Boyd did not promptly report the injury is not supported by substantial evidence; (2) employer DuraServ Corp. dba Cookson Door Sales of Arizona ("Cookson") and carrier Liberty Insurance Corp. waived the failure-to-promptly-report defense; and (3) substantial evidence does not show prejudice to the employer.  Because the ALJ did not make required findings of fact, we set the award aside.

### FACTS AND PROCEDURAL HISTORY

**¶2**       In December 2021, Boyd was a 30-year employee of Cookson, a company that installs commercial and residential garage doors. He had been a service manager, supervising the technicians, but in 2021 was moved back to a non-supervisory role as a service technician and one of the service technicians he had been supervising was made his manager.

**¶3**       In June 2022, Cookson disciplined him for using profanity toward another employee. At the disciplinary meeting, Boyd was upset and asked his supervisors when the company would address his injured shoulder, which he had hurt while working on a garage door in late December 2021. The supervisors, who included manager Mark Montgomery, responded that they knew nothing about a shoulder injury

he received at work. Boyd replied that he had reported the injury to Montgomery at the time. Montgomery denied that report, but said they would take his report as of June 2022 and have human resources process it. Boyd filed a report of the injury with the ICA in July 2022 and in August went to a doctor, who concluded that Boyd suffered a work injury and began treating him with physical therapy. Boyd filed a workers' compensation claim that was ultimately denied.

¶4           Boyd later testified about what happened in December 2021. Boyd was installing a commercial garage door in late December 2021 when he injured his right shoulder. As he was lifting a heavy piece of equipment overhead so that a co-worker, Mike Madole, could bolt it to a frame, he rested the heavy unit on his shoulder and felt a pop. He immediately complained of pain and called Mark Montgomery, a division manager, to report the injury in the presence of Madole. Boyd explained he called Montgomery instead of his direct supervisor, Matt Nelson, because Nelson was on vacation at the time. Rather than get medical treatment right away, Boyd self-treated his shoulder and avoided heavy lifting or other movements that would hurt his shoulder. Over the following months, he did not ask for accommodations at work but adjusted his activities to account for the injury, hoping it would get better. He testified he mentioned his injury to his supervisor in passing but neither filed a formal report nor sought medical help until August 2022.

¶5           At the time of the ICA hearing, Mike Madole had been a service technician for Cookson for 21 years. He testified he was present when Boyd hurt his shoulder and when Boyd called Montgomery in December 2021 to say he got hurt. Madole testified as follows:

> Q.     All right.   Your statement says that [Boyd] called Mark Montgomery.   ***Did you overhear that conversation?***
>
> A.     ***Yeah.***  He called, like I said, when we got down, and then he got on the phone and then he talked to Mark and said hey, you know, we got the operators.  We got problems, stuff like that.  ***And he goes, by the way, that thing hurt me.***  So then I'm, like, okay, well, I'm going to kind of walk away and start cleaning up.  So that was pretty much the end of the conversation.  But I did hear him say that he did actually call Mark and let him know that, hey, you know what?  We got the operator in, but in – in that also, that, you know, it hurt me.

(Emphasis added).

¶6          Madole also provided a written statement.  In it, he wrote that Boyd called the office in the middle of work and told Montgomery of his injury:

> Back At the end of 2021 December, I was working with Steve Boyd At The Gilbert Maintenance Building Replacing An [sic] Commercial Operator on the North East Door on the Building.  As We Were Installing New Operator Steve Said His Right Shoulder popped.  And He Felt a Sharp Pain.  We Got Down From the Lift And *Steve Called the Office on Speaker Phone And talked to Mark Montgomery Letting Mark know that Steve Hurt His Right Shoulder*.

(Emphasis added).

¶7          Boyd's manager, Mark Montgomery, testified he did not recall the cellphone conversation with Boyd in December 2021.  He clarified this meant he did not remember any of the phone calls he received that day, not that it did not happen.  His usual response to a worker's report of an injury is to find out what level of medical attention is needed.  He testified that he also would have started the process to generate paperwork. None of those processes happened in December 2021 or the months following.

¶8          Cookson's witnesses agreed Madole was credible.   Both Montgomery and Nelson testified he was an honest employee.  Nelson testified he had no reason to doubt that Madole witnessed Boyd report the injury to Montgomery over the phone.  And Montgomery testified that he had no reason to suspect Madole was lying.

¶9          Two medical doctors testified as to Boyd's injury. They disagreed as to the cause of Boyd's shoulder injury.

¶10          The ALJ denied Boyd's claim for failure to promptly report the injury under A.R.S. § 23-908(E), which requires injured employees to "forthwith" report the occurrence of an injury at work. In her decision, the ALJ summarized the testimony of the four lay and two expert witnesses. She also "deemed" Boyd's credibility a material issue and mentioned that "numerous" lay witnesses had testified. The ALJ made findings as to Madole:

> 7.     Mike Madole, Service Technician for Defendant Employer, testified that he was working with [Boyd] on

December 23, 2021 installing a garage door. [Boyd] told him that [Boyd] had injured his right shoulder during the installation and that [Boyd] called Mark Montgomery on the phone that day. Mr. Madole wrote a signed statement to that effect on July 23, 2002. Between December 2021 and July 2022, he was not asked by anyone at the employer about [Boyd's] shoulder or the alleged incident, and he did not provide any information to the employer about it.

¶11 She then concluded: "[u]pon evaluation of the testimony, the reasonable inferences to be drawn from said testimony and resolution of any actual or surmised conflicts therein, it is found that as a whole the evidence fails to corroborate and support the evidence and testimony of [Boyd]." After concluding Boyd failed to promptly report the injury, the decision notes: "[a]lthough [Boyd] alleges he reported to Mr. Montgomery on the date of injury, Mr. Montgomery had no recollection of that report and first heard of the injury in June 2022, six months later, in connection with a disciplinary hearing." The ALJ further concluded that Boyd's failure should not be excused "because the late report prejudiced [employer] by preventing a timely investigation." Although there is no explicit finding that Boyd suffered a work injury on December 23, 2021, the award by implication finds that fact. The ALJ did not summarize or mention Madole's testimony nor did the ALJ make a finding as to Madole's credibility.

¶12 Thereafter, Boyd requested a review and reconsideration of the evidence. He argued that the evidence showed he reported the injury in December 2021 and that, even if the ALJ found he reported it in June 2022, there was no prejudice to the employer. The ALJ reconsidered the evidence and affirmed her decision without substantive comment. This statutory special action appeal followed. We have jurisdiction. Ariz. Const. art. 6, § 9; A.R.S. §§ 12-120.21(A)(2), 23-951(A).

## DISCUSSION

¶13 When reviewing findings and awards of the ICA, we consider the evidence in the light most favorable to upholding the award. *Lovitch v. Indus. Comm'n*, 202 Ariz. 102, 105 ¶ 16 (App. 2002) (internal citation omitted). We uphold the ALJ's findings if they are reasonably supported by substantial evidence. *Malinski v. Indus. Comm'n*, 103 Ariz. 213, 216 (1968).

¶14 An ALJ must make direct findings on issues material to a decision. *Villanueva v. Indus. Comm'n*, 148 Ariz. 285, 288 (App. 1985). When an ALJ does not expressly reject a witness' credibility, we will not infer such

a rejection. *Joplin v. Indus. Comm'n*, 175 Ariz. 524, 528 (App. 1993). Relevant here, "where evidence of an interested witness is corroborated by a disinterested witness, rejection of that evidence amounts to arbitrary action by the [ALJ]." *Ratley v. Indus. Comm'n*, 74 Ariz. 347, 350 (1952).

**¶15** These principles require vacating the award at bar. For "[i]f we . . . approve the award here . . . there [is] no purpose in requiring judges to make findings." *Post v. Indus. Comm'n*, 160 Ariz. 4, 8 (1989).

**I.** **By Failing to Raise it to the ALJ First, Boyd Waived His Argument That He Lacked Fair Notice of Cookson's Affirmative Defense That He Failed To Report His Accident Forthwith.**

**¶16** Injured workers must "forthwith" report an accidental injury. A.R.S. § 23-908(E). If an injured worker does not report the injury forthwith, as a general matter, the employer is not required to pay their claim. A.R.S. § 23-908(F). Failure to report an injury forthwith works like an affirmative defense for the employer. *Magma Copper Co. v. Indus. Comm'n*, 139 Ariz. 38, 45 (1983). An employer must raise the defense at a time that gives the employee a chance to present evidence of excusal at a hearing. *Id.* at 46. Because there is no single prescribed method of raising the defense, ALJs determine the sufficiency of notice case-by-case. *Id.* at 46-49. The defense may be raised through the implied consent of the parties. *Id.* at 47.

**¶17** The record shows the following relevant facts. Cookson and Liberty (collectively "Cookson") issued a notice denying the claim on August 23, 2022. That notice contained the following comment: "[T]he alleged injury from 12/23/21 was not reported forthwith until some 6 months later. There is also no medical evidence to substantiate the injury." Then, on August 30, 2022, Cookson issued a second notice, accepting the claim as a medical-only claim because Boyd did not lose more than seven consecutive days of work. Finally, on September 10, 2022, Cookson issued a third and final notice denying the claim with the following comment: "This notice rescinds the [notice] dated 8/30/21, which was sent in error by another unit. The original [notice] dated 8/23/22 denying the claim is correct."

**¶18** Employers and carriers sometimes raise the defense of failure to report promptly by a pre-hearing letter to the ALJ or an oral statement on the record. Neither happened here. The hearing began without Cookson invoking the defense. The ALJ announced that the issue for hearing was simply "compensability" and asked if both parties agreed, which they did without explanation. There were no opening statements.

Failure to report promptly came up only once in the entire proceeding - during a colloquy on Cookson's objections to Boyd's questioning of Mark Montgomery. Cookson's counsel objected to a question about whether Montgomery asked Boyd in June 2022 if Boyd had told any co-workers about his injury after December 2021. Cookson's counsel argued that the question was irrelevant and stated that the employer's position was that the injury was not reported until June. Boyd's counsel replied:

> [The injury] was reported on June 14. And the question is, did they investigate after June 14 *because the company raised failure to forthwith report*, and that's why I'm asking those questions. (Emphasis added.)

**¶19** The ALJ did not rule on the objection, and Boyd's failure to timely report never came up again during the proceeding. But when Boyd moved for review and reconsideration of the award finding that he failed to report the injury promptly, he did not argue that Cookson failed to timely raise the defense of failure to report promptly. He argued only that the evidence did not support the ALJ's findings.

**¶20** On appeal, Boyd argues the ALJ erred by addressing the defense of failure to report promptly when the employer had not raised it in a way that gave fair notice. First, he notes there was no pre-hearing letter from counsel or clarification at the start of the hearing when the ALJ asked the parties to clarify the scope of the hearing. Second, he points to the confusion caused by the language in the three notices. The first notice asserted a failure to report promptly and a lack of medical evidence as reasons for denial. But the second notice superseded the first, approving the claim and seemingly waiving the defense, before the final notice in turn rescinded the second notice, stating the first notice was "correct." Third, Boyd argues that the parties could not have impliedly consented to adjudicate the defense because the employer's evidence related to a claim that Boyd was not credible and had created the injury report in retaliation for the disciplinary action. Thus, he argues he did not submit evidence that there was no prejudice in any delay because he had no reason to believe that the defense was at issue.

**¶21** While these arguments are substantial and have a basis in the record, we do not address their merits. Boyd waived them by failing to exhaust his administrative remedies with the ICA by raising them there first. *Norsworthy v. Indus. Comm'n*, 24 Ariz. App. 73, 74 (1975) (explaining party must first raise issue with ICA before raising it on appeal). Where a party fails to exhaust their administrative remedies in this fashion, we

cannot address their claim of error. *Stephens v. Indus. Comm'n*, 114 Ariz. 92, 94 (App. 1977). By failing to raise or even allude to his asserted lack of fair notice of the requirement to forthwith report his injury in his request for review, Boyd waived that asserted lack of fair notice on appeal. *Id.*

## II. The ALJ Failed to Make Sufficient Factual Findings to Support Its Conclusion That Boyd Failed to Report His Injury Forthwith.

**¶22** The ALJ is empowered to resolve conflicts in the medical evidence, draw warranted inferences, and judge witness credibility. *See Carousel Snack Bar v. Indus. Comm'n*, 156 Ariz. 43, 46 (1988); *Malinski*, 103 Ariz. at 217. An ALJ may reject testimony that is inherently inconsistent and contradictory, or when inferences can be drawn from other evidence that cast doubt upon the credibility of such testimony. *Wimmer v. Indus. Comm'n*, 15 Ariz. App. 543, 544 (1971).

**¶23** But an ALJ is also required to make direct findings on issues that are material to a decision – which can include witness credibility. *Villanueva v. Indus. Comm'n*, 148 Ariz. 285, 288 (App. 1985) (setting aside award where "claimant's credibility was a material issue and a specific finding that claimant was credible or lacked credibility" was thus necessary). When an ALJ does not expressly reject a witness' credibility, we will not infer such a rejection. *Joplin v. Indus. Comm'n*, 175 Ariz. 524, 528 (App. 1993) (quoting *Villanueva*, 148 Ariz. at 289). And while the ALJ "has very broad discretion," where an ALJ "refuses to follow uncontradicted information in the record" they "must state the reasons for doing so." *Id.* (citations omitted). Relevant here, "where evidence of an interested witness is corroborated by a disinterested witness, rejection of that evidence amounts to arbitrary action by the [fact-finder]." *Ratley v. Indus. Comm'n*, 74 Ariz. 347, 350 (1952).

**¶24** The ALJ here failed to make a finding about Madole's credibility where his testimony was uncontradicted and its weight was material to the decision. Boyd testified he gave Montgomery notice of his injury in December 2021. Madole corroborated this point. Significantly, Montgomery did not testify that no such call occurred, but merely testified that he lacked a recollection of the claimed call from Boyd. *See Ratley*, 74 Ariz. at 350 ("The [ALJ] may not arbitrarily reject . . . uncontradicted evidence when nothing intrinsic in the evidence itself or extrinsic in the circumstances casts suspicion thereon."). Both of Cookson's lay witnesses – Montgomery and Nelson – testified that Madole was honest and trustworthy. With Boyd's claim hinging on the acceptance of Madole's

credibility, the ALJ stated only this concerning his (or any lay witness) testimony:

> Upon evaluation of the testimony, the reasonable inferences to be drawn from said testimony and resolution of any actual or surmised conflicts therein, it is found that as a whole the evidence fails to corroborate and support the evidence and testimony of [Boyd].

**¶25** This is not enough for us to affirm. The ALJ must make findings on every material issue, including where necessary, the credibility of witnesses. *Villanueva*, 148 Ariz. at 288. Our cases have not defined what "material" means in this context. Relevant here, Black's Law Dictionary defines "material" in the context of evidence as "having some logical connection with the consequential facts[.]" MATERIAL, Black's Law Dictionary (12th ed. 2024). Thus, to be material, Madole's credibility must have "some logical connection" with Boyd's credibility. We cannot say Madole's credibility was immaterial given Madole was the sole witness to the alleged injury report and was the only uninterested witness who could corroborate Boyd's testimony. *See Villanueva*, 148 Ariz. at 288.

**¶26** Worse, the ALJ incorrectly summarized the testimony as though Madole had only testified that he learned of Boyd's report to Montgomery as hearsay from Boyd: "[Boyd] told him that [Boyd] had injured his right shoulder during the installation and that [Boyd] called Mark Montgomery on the phone that day."

**¶27** The ALJ's summary is wrong. It omits to state that Madole testified he heard Boyd tell Montgomery he was hurt at work. Though Madole's testimony is a material issue in this case, the ALJ appears not to have noted that his crucial testimony was direct witnessing of a report of accident – not mere hearsay. And the ALJ made no finding that Madole was not credible. The fact that the order accurately summarizes and recites all other relevant testimony while omitting to correctly summarize Madole's suggests the court disregarded it.

**¶28** We must therefore set aside the award. *See Villanueva*, 148 Ariz. at 288-89 (setting aside an award where the ALJ failed to make a specific finding regarding claimant's credibility where credibility was material). *Villanueva* emphasizes that this rule applies when the ALJ "refuses to follow uncontradicted evidence in the record." *Id.* at 288. Even Montgomery did not contradict Madole's account of the call – he demurred that he did not remember it but was not denying it happened. And because

Madole, a disinterested witness, corroborates the interested witness, Boyd, rejecting Boyd's testimony without a finding on Madole's credibility is arbitrary. *Ratley*, 74 Ariz. at 350.

**¶29**　　　　The award lacks specific findings on the material issue of Madole's credibility – especially given the award misrendering Madole's testimony.　　Without such findings, we cannot determine the legal soundness or lack of arbitrariness of the ALJ's conclusion that Boyd failed to promptly report his injury. *See Post*, 160 Ariz. at 7-8 (requiring specific findings to allow the court to review the decision and award for legal soundness and for a sufficient factual basis).

### III.　　The Dissent's Efforts to Harmonize the Award with Madole's Testimony Are Unpersuasive.

**¶30**　　　　The dissent responds that Madole's testimony can be interpreted to mean he did not witness a report of an injury on the job. Dissent, ¶ 41 (citing *Thompson v. Indus. Comm'n*, 160 Ariz. 263, 266 (1989)). Thus, the dissent contends, the award is not inconsistent with Madole's testimony.　　The dissent's premise, if accepted, would make Madole's testimony immaterial, excusing the ALJ from making any finding as to his credibility.　　And it would make the award reasonably supported by substantial evidence, requiring affirmance. *Malinski*, 103 Ariz. at 216.

**¶31**　　　　We vacate the award because that premise is flawed:　the record does not support the dissent's reading of Madole's testimony and written statement.　Madole explained that Boyd called Montgomery from a jobsite and told Montgomery "that thing hurt me" and that Boyd's right shoulder got hurt.　Or as Madole put it, "Steve called the office on speaker phone and talked to Mark Montgomery letting Mark know that Steve hurt his right shoulder."　That is not "mere[ly] . . . tell[ing] his employer that he does not feel well or that he is in pain," which *Thompson* tells us is not a report.　160 Ariz. at 266.　It contains instead, as *Thompson* requires, "facts connecting the injury . . . with the employment." *Id.*　The facts are simple and undisputed:　(1) Boyd was working with Madole at a jobsite installing a heavy garage door operator, (2) the operator injured Boyd, (3) Boyd and Madole got down from a lift, (4) Boyd called his supervisor Montgomery, and (5) Boyd told Montgomery how "that thing" hurt his "right shoulder." These facts "indicat[e] to a reasonably conscientious manager that" Boyd's injury "might involve a workers' compensation claim." *See id.*　Thus, Madole's testimony, unless rejected, showed Boyd made a report in December 2021 clearing the bar set by *Thompson*.　160 Ariz. at 266 (requiring a report of "facts connecting the injury . . . with the employment" that

"indicat[e] to a reasonably conscientious manager that" Boyd's injury "might involve a workers' compensation claim.").

¶32          The dissent disagrees, but its arguments don't track with the legal standard in *Thompson*.

¶33          *First*, the dissent reduces Boyd's report to a passive reference – "mentioning his shoulder pain." Dissent, at ¶ 47. But Boyd said more. He was lifting a heavy garage door operator, and told Montgomery it "hurt him." The dissent's formulation incorrectly elides out of Boyd's report that ***the door*** hurt Boyd – which "connect[s] the injury . . . with [Boyd's] employment." *See Thompson*, 160 Ariz. at 266.

¶34          *Second,* the dissent dismisses Boyd's report as "passing." That argument also fails. The question is not the report's length or complexity, but whether it put Montgomery on notice that the door hurting Boyd "might involve" a claim. *Id.* Boyd's report did precisely that. When a worker is hurt on the job by the conditions of their work, they have such a claim. A.R.S. § 23-1021 (providing that "every employee . . . injured . . . by accident arising out of an in the course of his employment . . . shall be entitled to" worker's compensation). *See also* Ariz. Const. art. 18, § 8 (requiring enactment of worker's compensation law compensating workers for "injury . . . in the course of . . . employment.") Saying the garage door hurt him, Boyd at minimum let Montgomery know he might have a claim.

¶35          *Third*, the dissent seeks to make Boyd's state of mind disqualifying, ascribing expertise in claims to him. Dissent, ¶ 47. But the law asks what a reasonable Mark Montgomery would think based on Boyd's actual report – not whether Boyd should have known to give a better report, or could have given it to someone else. *Compare Thompson*, 160 Ariz. at 266 to Dissent, ¶¶ 47-48, 52.

¶36          *Fourth,* the dissent's suggestion that we disregard *Thompson*'s facts fails. Dissent, ¶ 49. There, our supreme court held that where an employer knew its employee had a heart attack on the job "while performing the strenuous duties assigned him," those facts "put [the employer] on notice that the heart attack could involve a potential compensation claim." *Thompson*, 160 Ariz. at 266-267. Here, Boyd reported he was injured by the door while he was performing the strenuous duties assigned him – lifting a roughly 150-pound door operator. To the contrary, the dissent disregards how accommodating the standard in *Thompson* is to the claimant. There, our supreme court found forthwith reporting because the employee's "heart attack *could* involve *a potential* compensation claim."

*Id.* at 267 (emphasis added). Telling your boss a heavy door hurt you when you were lifting it on the job inescapably *could* involve a *potential* compensation claim. *Thompson* requires setting aside this award.

¶37 Finally, the dissent does not address the ALJ's misstatement of Madole's testimony. The ALJ incorrectly dismisses it as hearsay testimony of Boyd's later statements, instead of the direct evidence it was of Madole hearing Boyd's worktime call to Montgomery complaining of his right shoulder injury. The ALJ's misstatement underscores the need for a finding as to the material issue of Madole's credibility, as the ALJ apparently misunderstood the record.

¶38 Because the award lacks specific findings, we do not reach whether Cookson was prejudiced by Boyd's alleged failure to report forthwith.

**CONCLUSION**

¶39 For these reasons, we set aside the award.

**P E R K I N S, J., dissenting:**

¶40 I agree with the majority that Boyd waived his fair notice argument. Majority ¶¶ 16–21. But I dissent from the decision to set aside the award, which was legally sound based on this record.

¶41 The majority holds that Madole's testimony was material, the ALJ's conclusion depends on rejecting that testimony, and therefore the failure to make explicit credibility findings dooms the award. No such findings were necessary here because the award is consistent with Madole's testimony.

***The record supports the ALJ's conclusion that Boyd failed to timely report his injury.***

¶42 We should only vacate an award if we are "unable to determine whether the basis of the [ALJ's] conclusion was legally sound." *Cavco Indus. v. Indus. Comm'n*, 129 Ariz. 429, 435 (1981). "[T]he lack of findings on material issues does not invalidate an award per se." *Id.*; *see also Ford v. Indus. Comm'n*, 145 Ariz. 509, 519 (1985) ("Specific findings are not necessary, provided that the reviewing court can determine from the evidence whether the ultimate basis given by the hearing officer for his

conclusion was legally sound."); *Villanueva v. Indus. Comm'n*, 148 Ariz. 285, 288–89 (App. 1985) (same).

¶43 Here, we can determine that the ALJ's conclusion was legally sound even without inferring that the ALJ rejected Madole's testimony. Accepting Madole's account of the phone call as true, substantial evidence in the record supports the conclusion that Boyd failed to timely report his injury. *See Malinksi v. Indus. Comm'n*, 103 Ariz. 213, 216 (1968) (we affirm an ALJ's award when supported by substantial evidence).

¶44 "The mere fact that an employee tells his employer that he does not feel well or that he is in pain does not give the employer reason to know that the injury might involve a potential compensation claim." *Thompson v. Indus. Comm'n*, 160 Ariz. 263, 266 (1989). "There must in addition be some knowledge of accompanying facts connecting the injury or illness with the employment, and indicating to a *reasonably conscientious* manager that the case might involve a potential compensation claim." *Id.* (quoting Larson, *The Law of Workmen's Compensation* § 78.31(a)(2) (1988)).

¶45 There is ample evidence that Boyd's phone call with Montgomery did not give Montgomery "reason to know" the phone call was an injury report. *See id.*

¶46 Madole testified that, after the incident with Boyd's shoulder, the two continued to install the heavy piece of equipment: "we got it in there where I could get the bolts in, so I tightened it up, and then [Boyd] finished terminating the wires, and then we got down, and then that's when he made the phone call." Boyd began the call by reporting on their progress in installing the equipment before saying, as Madole characterized it, "by the way, that thing hurt me." At which point Madole walked away and heard nothing further. Madole's testimony is thus consistent with finding that Boyd merely mentioned the shoulder issue to Montgomery in passing.

¶47 Montgomery's testimony belies any claim that "a reasonably conscientious manager" in his position would have considered Boyd mentioning his shoulder pain in passing to be an injury report. *See id.* Montgomery testified that he knew Boyd was well-versed in Cookson's injury reporting protocols because for years Boyd worked as a Cookson supervisor responsible for handling injury reports. The injury reporting protocol required Boyd to call his direct supervisor Nelson rather than Montgomery. While Boyd testified that he called Montgomery because Nelson was on vacation, company records show Nelson was working that day.

**¶48**        Boyd's passing comment on the call was insufficient under *Thompson* to serve as a timely injury report to Montgomery. And Montgomery, aware of Boyd's expertise in compensation claim protocols at Cookson, acted reasonably in response to such a passing comment. Though Montgomery testified that he did not remember the call, he also testified that if Boyd had reported an injury to him, he would have followed company protocols to address it. Montgomery did not engage those protocols. And Boyd never followed up with either Nelson or Montgomery as required by the protocols he was familiar with—he mentioned the injury again only when facing discipline six months later.

**¶49**        The majority's reliance on *Thompson* to reach a contrary conclusion disregards the facts presented in that case. There, the employee failed to immediately file a report "because he did not know he was entitled to workers' compensation." 160 Ariz. at 265. And the employer was on notice because an owner "heard [the employee] yell that he thought he was having a heart attack, drove [the employee] to his house and radioed [the employee's] wife to have her meet them at the house and take [the employee] to the hospital." *Id.* at 266. The employer knew of the employee's previous heart attack, his current strenuous duties, the overtime he had been working, and that this second heart attack occurred while working. *Id.*

**¶50**        Our supreme court set forth a fact-driven inquiry in *Thompson*, which it decided in the context of an unsophisticated employee and an employer who observed firsthand the relevant circumstances. A far cry from the scenario presented here.

**¶51**        The majority's position rests entirely on its determination that the ALJ's failure to make explicit credibility findings renders the award unsupportable. But unlike the decision reviewed in *Villanueva*, the ALJ's limited findings here do not impede our review. In *Villanueva*, the court set aside an award because the ALJ failed to make findings on the claimant's credibility, and the award "[could] only be supported if the claimant's testimony was not credible." *Villanueva*, 148 Ariz. at 286. Here, the record supports the award even crediting Madole's testimony as true.

**¶52**        The record presented the following unchallenged facts to the ALJ: (1) during the 15 years Nelson served as a field technician, Boyd was his operations manager responsible for processing workers' compensation claims; (2) Nelson was the manager to whom Boyd should have reported any injury; (3) Nelson was working and available for a call that day but Boyd did not contact him about his shoulder that day or at any time thereafter; (4) Boyd mentioned his hurt shoulder in his call to Montgomery;

(5) Boyd took zero actions consistent with a contemporaneous belief that he had a compensable injury despite his admitted expertise in both compensable injuries and the process for reporting them at Cookson; and (6) Boyd did not characterize his call with Montgomery as an injury report until he was confronted with discipline six months later. The ALJ's conclusion that Boyd failed to forthwith report his injury is thus consistent with both Madole's testimony and the record as a whole. I conclude that the record supports the award.

***The record also supports that Boyd's failure to timely report his injury prejudiced Cookson.***

**¶53**		When a tribunal finds failure to report forthwith, the inquiry shifts to whether the failure is excused under Arizona Revised Statutes Section 23-908(F). *See Douglas Auto & Equip. v. Indus. Comm'n*, 202 Ariz. 345, 347, ¶¶ 5–6 (2002). If the Commission finds the employee's untimely reporting prejudiced the employer, it will not excuse the untimely reporting. *Id.* at ¶ 7. This serves the dual purpose of (1) ensuring the employee receives prompt medical treatment to prevent aggravation of the injury, and (2) affording the employer an opportunity to investigate the accident as soon as possible, so that reliable evidence can be preserved. *See Magma Copper Co. v. Indus. Comm'n*, 139 Ariz. 38, 43 (1983). "[W]hile the number of days between injury and the employee's report of the injury is not decisive, the fact that a short period of time lapses . . . makes prejudice to the employer less likely." *Douglas Auto*, 202 Ariz. at 348, ¶ 12. The inverse is also true. A long delay makes prejudice more likely—the employee's injury might be aggravated by a delay in treatment, and the employer's investigation might be hindered by forgetful witnesses or lost documents.

**¶54**		The ALJ's factual findings support her conclusion that the delay prejudiced Cookson. The ALJ found that Boyd's injury occurred in December 2021. After six months of ineffective self-treatment, and a month after an unrelated disciplinary intervention began, Boyd filed his claim because "it just hurt too much." By the end of the six-month delay, Montgomery was unable to remember whether the phone call even happened. And no one interviewed Madole—the only witness to the injury—until after his July 2022 note recounting what he witnessed seven months earlier. These findings demonstrate prejudice to Cookson. The ALJ did not have to expressly combine her findings with her conclusion that Cookson was prejudiced by Boyd's delay. *See id.* at ¶ 13 (failure to expressly combine the prejudice finding with the supporting facts does not defeat an award if the factual findings are sufficiently specific to support the conclusion).

## CONCLUSION

**¶55** We should not set aside this award because the record demonstrates it is legally sound. I dissent.



MATTHEW J. MARTIN • Clerk of the Court
**FILED**: JR